F:\WP\WORK\RTG\CHEATLE.COM

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT S. CHEATLE, JR. and NANCY A.** | : | |
| **CHEATLE, husband and wife** | : | |
| **834  Paradise Drive** | : | **CIVIL ACTION NO.** |
| **Ambler, PA        19002** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **DAVID A. KATZ and DAWN KATZ** | : | |
| **832 Paradise Drive** | : | |
| **Ambler, PA           19002** | : | |
| **and** | : | |
| **PARADISE CONTRACTORS, INC.** | : | |
| **832 Paradise Drive** | : | |
| **Ambler, PA 19002** | : | |
| **and** | : | |
| **PARADISE PINES HOMEOWNERS** | : | |
| **ASSOCIATION** | : | |
| **c/o 832 Paradise Drive** | : | |
| **Ambler, PA 19002** | : | |
| **and** | : | |
| **PARADISE MANAGEMENT GROUP, INC.** | : | |
| **832 Paradise Drive** | : | |
| **Ambler, PA 19002** | : | |
| **and** | : | |
| **PARADISE DEVELOPMENT GROUP, INC.** | : | |
| **832 Paradise Drive** | : | |
| **Ambler, PA 19002** | : | |

## COMPLAINT

### Parties:

1.      Plaintiffs, Robert S. Cheatle, Jr. and Nancy A. Cheatle, husband and wife,

(hereinafter "the Cheatles"), are adult individuals, residing at 834 Paradise Drive,

Ambler, PA 19002.  The Cheatles are purchasing signator parties to a certain

Agreement To Sell Real Estate dated October 30, 2000 (hereinafter "Agreement"),

for the sale and conveyance of a then unimproved parcel of land, more fully described below (the "Land"). The Cheatles are also signators to a certain Construction Contract dated August 6, 2000, together with Exhibits A, B, and C and corollary drawings, specification sheets and plans appended thereto (hereinafter "Construction Contract"), for the construction of a custom designed residential home (the "Home") pursuant to certain Building Plans appended to the Construction Contract (the "Plans"), the terms of which Construction Contract are also described below. The primary purpose of this Action is to seek specific performance of both the Agreement and the Construction Contract; to compel remediation of multiple defects in the Land and in the construction of the Home, which defects are of a serious and compelling nature; and/or in the alternative, to seek rescission of the Agreement and the Construction Contract, and the refund of all monies paid to Defendants by the Cheatles. True and correct copies of the Agreement and Construction Contract (with Exhibits A, (and as part of A - "X": House of the Nineties #54), B, and C) are attached hereto, made a part hereof, and marked as Exhibits "1" and "2" (hereinafter at times referred to collectively as the "Agreements"). There are no corollary documents, which are appended to the original Construction Contract  included with the copy of the Construction Contract attached hereto as Exhibit 2 (except for Exhibits A, (and as part of A - "X": House of the Nineties #54), B, and C because same are bulky and in possession of the parties.

2.    Defendants, David A. Katz and Dawn Katz, husband and wife, (sometimes collectively hereinafter referred to as "Katz"), are Pennsylvania citizens residing at

832 Paradise Drive, Ambler, PA 19002 (the "Katz Residence").   The Katz Residence is located on one of four lots of land previously constituting a single parcel, referred to at times as "Paradise Pines" or "Paradise Drive";  Katz caused the original parcel to be subdivided ultimately into four (4) residential lots.  The Cheatles' Land (Lot 3) is contiguous with Lot 4, the Katz lot to the east; while Lot 2 of the subdivided parcel is adjacent to the Cheatles' Land to the west (the "Mullen's Lot").  A true and correct copy of a "Grading Plan - Lot 3 prepared for David & Dawn Katz" dated February 11, 2000, drawn from the files of Horsham Township, is attached hereto, made a part hereof, marked Exhibit 3; the Grading Plan is also a corollary exhibit document appended to the Construction Contract.  Katz also maintain their residence as a registered business address for the corporate defendants.  David A. Katz was and is a signator party to the Agreement and to the Construction Contract;, he was the title holder of record to the Land at the time of the sale and conveyance to the Cheatles, and is the "Seller" under the Agreement.

3.    Defendant, Paradise Contractors, Inc.  (hereinafter "PCI"), for which a Certificate of Incorporation was filed on August 4, 2000 by Katz, (two days prior to the date of the Construction Contract) is a Pennsylvania corporation having a registered business address at "832 Paradise Drive, Ambler, PA 19002", the Katz Residence.  Defendant David A. Katz was and is the Chief Executive Officer/Secretary and Treasurer thereof.   PCI is an affiliate of the following "Paradise" related entities by common ownership, officers and common management:

A.     Defendant Paradise Pines Homeowners' Association ("HOA") is a Pennsylvania non-profit corporation having a registered office at 501 Office Center Drive, Suite 125, Fort Washington, PA, purportedly organized for the purpose of maintenance, preservation and architectural control over the Seller's subdivided lots, including the Cheatles parcel of Land.  Defendant David A.  Katz was and is the Chief Executive Officer and Defendant Dawn Katz is the Secretary/Treasurer thereof.

B.     Defendant Paradise Management Group, Inc., formed on or about April 20, 2001, is a Pennsylvania corporation having a registered office at 832 Paradise Drive, Ambler, PA 19002, the Katz Residence.  Defendant David A. Katz was and is, the Cheatles believe, the CEO and Secretary/Treasurer thereof.

C.     Defendant Paradise Development Group, Inc., formed on or about April 20, 2001, is a Pennsylvania corporation having a registered office at 832 Paradise Drive, Ambler, PA 19002, the Katz Residence.  Defendant David A. Katz was and is the CEO/Secretary and Treasurer thereof.

Both PCI and the foregoing "Paradise" entities  are controlled and managed by David A. Katz,  who is the CEO of each Corporate entity and by Dawn Katz. Defendant PCI was contemplated under the Agreement to be the contractor for the construction of improvements to be erected upon the Land.  See Exhibit 1, ¶4.

4.     At all times relevant hereto, David A. Katz represented himself directly to the Cheatles to be experienced in the business of selling residential subdivided lots,

such as the Land which is the subject of the Agreement and this Action.

5.    At all times relevant hereto, David A. Katz represented himself directly to the Cheatles to be experienced in the general contracting business of custom residential home construction.

6.    For the reasons more fully described below, David A. Katz and Dawn Katz are sued herein individually and in their capacities as the sole shareholders, directors and officers of the Pennsylvania corporations described in the caption and in Paragraph 3 above.

## Jurisdiction and Venue

7.    This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. §1331 insofar as Count IV raises a cause of action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961, et seq. and, by virtue of this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the remaining counts of the Complaint (Counts I, II and III through IX).

8.    Venue is proper in the Eastern District of Pennsylvania pursuant to 18 U.S.C. §1965(a) and 28 U.S.C. §1391(b), because the claims arise in this District and all of the defendants reside, transact business and maintain a principal place of business in this District.

## Agreement To Sell Real Estate - Lot 3 of Paradise Pines
## 834 Paradise Drive, Ambler, PA

9.    On October 30, 2000, David A. Katz and the Cheatles executed the Agreement whereby Katz, as "Seller", agreed to sell and the Cheatles, as "Buyer", agreed to

buy the Land comprising **.81** acres of unimproved land known as Lot 3, Tax Parcel No. 36-00-11053-02-6, Horsham Township, Montgomery County, PA, as also described in ¶ 1 of the Agreement.  <u>**See**</u> Exhibit 1, ¶ 1.  The Land is unique and situated in adjacent proximity to the Katz personal residence i.e., next door to the Katz Residence. <u>See</u> Exhibit 3.

10.    In prior contemplation of the purchase of the Land upon which their Home was to be constructed, on or about August 6, 2000, the Cheatles as "Owners", and David A. Katz, individually and/or in behalf of himself and PCI, as "General Contractor", entered into the Construction Contract whereby Katz contracted to construct the Cheatles Home **"in strict accordance with the plans and specifications approved by the Owners... Exhibit A."**    <u>**See**</u> Paragraph A of Exhibit 2 (emphasis added) cited at ¶11B(1) below.

<u>**Terms and Conditions of Agreement and Construction Contract at Issue**</u>

11.    A.    In consideration of the mutual covenants and promises within the **Agreement,** and with time being of the essence, Katz as the "Seller" and the Cheatles as the "Buyer" agreed, **in relevant part**, as follows:

(1)    A distinct arms-length purchase price of $300,000.00 as quoted by Katz for the conveyance of the Land, which was paid by the Cheatles.

<u>**See**</u> Exhibit 1, ¶ 2;

(2)    Closing to take place **on or before December 30, 2000;**

<u>**See**</u>  Exhibit 1, ¶ 15 ;

(3)    Per Paragraph 4: "...*Seller warrants that there shall be no violations of building or zoning codes at the time of closing and that* **said property will accommodate house to be built by Paradise Contractors, Inc. for Robert and Nancy Cheatle pursuant to Construction contract.**" [emphasis added]; and

(4)    Per Paragraph 6:    "*DEFAULT BY SELLER: If the Seller fails to perform any of the covenants of this contract, the aforesaid money paid by the Buyer, at the option of the Buyer, shall be returned to the Buyer on demand; or the Buyer shall have only the right of specific performance.*"

B.    In consideration of the mutual covenants and promises within the **Construction Contract**, and with time being of the essence, Katz, for himself and through PCI, as the "General Contractor" with the Cheatles as the "Owners", agreed, **in relevant part**, as follows:

(1)    Per Paragraph A:

    "A.    <u>Scope of Construction</u>

        1.    *General Contractor shall construct a home ("Construction") for Owners' on their property at Lot #3, Paradise Pines, aka 834 Paradise Drive, Ambler, PA (the "Project Site"), as herein provided.*

        2.    *General Contractor shall complete the Construction in strict accordance with the plans and specifications*

-7-

**approved by Owners (which plans and specifications are attached hereto as Exhibit A)**, and in compliance with all applicable laws, ordinances and regulations ("Laws"). General Contractor **shall not make any substitutions** of items specified on such plans and specifications absent the prior written consent of Owners, which consent Owners shall not unreasonably withhold so long as the quality of the proposed substitution is equal to or better than the quality of the item or material originally specified. (Emphasis added).

3.    ...General Contractor shall notify Owners when General Contractor deems the Construction to be substantially complete, whereupon Owners shall inspect the Project Site with General Contractor at a mutually convenient time and jointly prepare a 'punch list' in duplicate and initialed by the parties, on which shall be listed all items of Construction which are defective, incomplete or nonconforming to the plans and specifications (the 'punch list items'). General Contractor shall complete the construction, repair or replacement (as necessary) of all punch list items promptly following completion of

> > *the punch list and in any event within thirty (30) days thereafter.  ...*
>
> > 4.    *General Contractor estimates that Construction will be completed by October 12, 2001.*"

(2)    Per Paragraph B:

> "*Pricing and Deposit*
>
> *The Construction is to be performed and completed on a fixed price basis.  The total price of the Construction, including, without limitation, General Contractor's profit and overhead, is $650,000 (the 'GMP')...*"

(3)    Per Paragraph C5: "*The GMP may be adjusted only by written change order executed by both General Contractor and Owners.  It shall be General Contractor's responsibility to cause the Construction required by any change order to be reflected on Exhibits A and B, immediately after the change order is executed. ...*"

(4)    Per Paragraph C6: "*Exhibits A and B, as modified by any change orders, together with this contract, are herein collectively referred to as the 'Contract Documents'.*"

(5)    Per Paragraph D:

> "*Contingencies*
>
> *General Contractor agrees to diligently pursue all required approvals and permits for the Construction as shown on Exhibit A without additional engineering controls, surveys or similar changes.  General*

*Contractor shall pay for all permit fees required by all applicable governmental agencies necessary for the Construction. In the event a permit for the Construction shown on Exhibit A, without additional engineering controls, surveys or similar changes, is not obtained by General Contractor, Owner may terminate this contract by written notice to General Contractor. Should Owners elect to terminate this contract pursuant to the foregoing provision, General Contractor **shall return all monies paid to General Contractor by Owner** and thereafter neither party shall have any obligation to the other."*

(Emphasis added)

(6)    Per Paragraph E:

*"General Contractor's Indemnity and Insurance*

1.    *General Contractor hereby agrees to be responsible to Owners for and to indemnify Owners from and against all liability, actions, damages, claims, demands, judgments, losses, costs **and expenses (including, but not limited to, attorney's fees)** arising **or alleged** to have arisen out of or resulting from the . . . loss or damage to any property, arising out of or resulting, in whole or in part, from (a) any failure of General Contractor to perform any of the Construction, to the extent such failure was not caused by Owners; (b) any misconduct, malfeasance, misfeasance, or nonfeasance on*

-10-

*the part of General Conctractor [sic] or any of the
subcontractors on or about the Project Site during performance
of the Construction, and (c) any act of General Contractor or
any of the subcontractors beyond the scope of Construction
authorized by Owners. ... In no event shall General
Contractor's obligations to indemnify hereunder be limited by
or to the extent of any insurance coverage obtained by
General Contractor or the proceeds thereof.* (Emphasis
added).

2.    *Before commencing the Construction, General Contractor shall
procure and maintain, or cause to be procured and maintained,
throughout the term of this agreement and for at least one (1)
year following completion and final acceptance of the
Construction, at least the following policies of insurance (and
shall be responsible for the administration of all claims
thereunder):*

1.    *\* \* \*;*

2.    *Commercial General Liability, written on an occurrence
based form, with at least the following limits of liability
(CSL):*

$1,000,000    *General Aggregate Limit*

$1,000,000    *Products-Completed Operations Aggregate*

-11-

$1,000,000   Each Occurrence Limit

$    50,000   Theft and Vandalism ..."

(7)    Per Paragraph E3: "General Contractor shall also purchase or cause to be purchased and at all times maintain or cause to be maintained completed value Builder's Risk insurance upon the Construction for the completed value thereof (excluding foundation and excavation costs).  Such insurance shall include Owners and all subcontractors on all tiers as additional insureds. ... General Contractor shall be responsible for any co-insurance penalties or deductibles in the event of an insured loss."

(8)    Per Paragraph E4: "All policies of insurance required under this contract shall (i) name Owners as additional insured . ...  Before commencing the Construction, General Contractor shall deliver to Owner certificate(s) evidencing said insurance."

(9)    Per Paragraph E5: "General Contractor shall require all subcontractors to provide the types of coverages referenced in paragraph E.2 ..."

(10)    Per Paragraph E7: "With respect to any insurance claims covered by the insurance policies maintained by General Contractor pursuant to the provisions of this Section E, General Contractor's insurance shall be primary, notwithstanding any insurance coverage maintained by Owners."

(11)    Per Paragraph F:

*"Scheduling*

1.    *General Contractor shall be responsible for promptly providing a construction schedule to Owners and adhering to same. Construction is to be continuous and not performed in an intermittent manner."*

(12)    Per Paragraph G:

*"Coordination*

**General Contractor shall be responsible for coordinating all Construction including Construction performed by subcontractors and the employees of Paradise Contractors, Inc. General Contractor shall also be responsible to coordinate delivery of construction materials to the jobsite in a timely manner."** (Emphasis added)

(13)    Per Paragraph H:

*"Supervision*

**General Contractor shall supervise all phases of the Construction.   General Contractor shall be responsible to Owners for all acts or omissions of General Contractor's employees, subcontractors, and their agents which cause any damage or loss to the persons or property of Owners, their children or their invitees."**   (Emphasis added)

(14)    Per Paragraph I:

"_Subcontracts_

_1.    General Contractor shall let all subcontracts, unless otherwise agreed.  ..._"

(15)    Per Paragraph J:

"**_Quality Control_**

**_General Contractor shall be responsible for assuring that the Construction is performed in a good and workmanlike manner and in  accordance with the standards of professional care typically expected of a qualified and experienced general contractor._**" (Emphasis added)

(16)    Per Paragraph N:

"_Warranty_

_Owners_

_1.    General Contractor warrants to Owners that, upon Final Completion, the Construction:_

_(i)    shall conform to all Laws as of the date the Construction is performed and shall conform to the Contract Documents;_

_(ii)    **shall be free from defects or deficiencies in equipment, materials, or workmanship, latent or otherwise;**_

-14-

> **(iii)    shall    incorporate    only    new    materials    and equipment;** and
>
> (iv)    shall be free of Liens.
>
> 2.    General Contractor's warranty does not extend to normal settlement cracks, and shall expire one (1) year after Final Completion of the Construction.    General Contractor shall assign and deliver to Owners at Final Completion all equipment warranties and all warranties received from subcontractors."

(Emphasis added)

(17)    Per Paragraph P:

> "<u>Miscellaneous</u>
>
> 1.    This contract shall be governed by the laws of the Commonwealth of Pennsylvania."

(18)    Per Paragraph P5, the term "Complete Construction" is defined in Paragraph F1(a).    Paragraph F1(a) defines the term "Complete Construction" by reference to the date of issuance of a certificate of Occupancy for the Home by Horsham Township.

(19)    Per Paragraph P6: "The terms, conditions, rights and obligations in this Agreement, and all other attachments thereto, shall survive 'Complete Construction', and this Agreement shall not be deemed to be merged into any other documents unless explicitly stated and mutually agreed to by the parties."

-15-

(20)   Per Signature Block:

"*Paradise Contractors, Inc.*

*By:_____*
      *David Katz*"

### Material Inducements to the Cheatles' Execution
### of the Agreements and Defendants' Subsequent Fraud,
### Misrepresentations, Deceit, Breach and Noncompliance with Agreements

12.   A.   David A. Katz personally assured the Cheatles, represented and warranted,

and consistent therewith, was and is contractually bound to the commitment

that the Land would accommodate the Home which was to be built "in strict

accordance" with the Plans.  See ¶4 of the Agreement (¶11A(3) above of this

Complaint); ¶A1 and 2 of the Construction Contract (see ¶11B(ii) above).

1.   notwithstanding the foregoing, land use restrictions relating to

Horsham Township's Zoning Ordinance provisions addressing

pervious to impervious surface ratios precluded construction of the

Home per the Plans, a fact which was known or should have been

known to Katz as an experienced real estate seller and residential

home construction contractor.  In fact, according to information

supplied by Township officials, and therefore believed to be true by

the Cheatles,  Katz had to address the Township Ordinance dealing

with impervious surface building coverage limitations with respect to

their own residential lot and home construction.  Further, the Home

was not able to be constructed in accordance with the Plans on the

Cheatles' Lot without a variance from the Township Zoning Board which Katz failed to advise Cheatles and failed to obtain in violation of ¶4 of the Agreement and of ¶D of the Construction Contract.  <u>See</u> Complaint, ¶11B(5) above.  Instead, in further breach of the Agreement and Construction Contract, Katz altered the design of the Home, ignored the appended Plans, and substituted different design plans without the knowledge, consent or approval of the Cheatles in violation of ¶ C5 of the Construction Contract. <u>See</u> ¶11B(3) above of this Complaint.

B.      David A. Katz personally assured the Cheatles, represented and warranted and consistent therewith, was contractually bound to cause the construction of the Home to be completed no later than October 12, 2001.  See ¶ A4 of the Construction Contract.  In addition, Katz personally assured the Cheatles they would coordinate the timing of closing and their occupancy of the Home by three (3) months' prior notice from him of the anticipated completion date of construction so that in reliance thereon, the Cheatles would list for sale and sell their prior residence in an orderly manner to dovetail with the availability of their Home for occupancy.

1.      notwithstanding the foregoing, and with an agreed two month extension of the original April 30, 2001 closing date, Katz nevertheless failed to supervise delivery of labor and materials to the Cheatles' Home site but instead prioritized labor activity at the

-17-

Mullen's Lot (Lot 2) to construct and install a pool, patio and cabana thereon, using the Cheatles Lot for access thereto. Katz failed to coordinate the timing of completion of the Home construction, failed to give the Cheatles accurate and reliable advance notice, and Closing on the Home was delayed until July 26, 2001, an additional three months beyond the original closing date. As a result, the Cheatles, who had placed their prior residential property for sale and closed on the sale, were forced to rent hotel rooms and incur additional personal expenses as described below, for which Katz agreed to reimburse the Cheatles but for which they have refused to honor their contractual obligations and personal commitment:

(a)  Construction Loan Interest:           $12,504.51;

(b)  Mortgage Placement Fee (1%):          $10,000.00;

(c)  Professional labor costs to move
     furniture from garage to the Home:    $    850.00;

(d)  Labor costs to move furniture to
     Home garage:                          $    900.00; and

(e)  Hotel Expenses for twenty-five
     (25) days @ $136.00 per day:          $  3,400.00.

For purposes of application of the one (1) year Warranty under Paragraph N of the Construction Contract, the Home is deemed "completed", by reference to the definition contained in Paragraph F1(a) thereof, on August

-18-

22, 2001, the date of issuance of the Certificate of Occupancy by Horsham

Township. See ¶¶11B(16) and (18) above.

C.     David A. Katz personally assured the Cheatles, represented and warranted,

and consistent therewith, was and is contractually bound to construct and

deliver their Home "in strict accordance" with the Plans and further, that he

and his or PCI's subcontractors  would make no changes or substitutions

without the Cheatles' prior written consent utilizing change order forms to be

appended to the Construction Contract.   See ¶ A2 and ¶ C5 of the

Construction Contract. See ¶¶11B(1) and B(3) above.

1.     notwithstanding, Katz violated the foregoing representations and

agreements, negligently failed to supervise his and/or PCI's

subcontractors and negligently failed to coordinate the construction,

and repeatedly misrepresented his intentions, acts and/or omissions

during the period of construction of the Home, by, inter alia,

substituting materials of a lesser quality than specified in the Plans or

by his negligence, allowing their or PCI's subcontractors to substitute

materials of a lesser quality than specified, all to the detriment of the

Cheatles but to the economic gain to Katz, his spouse and/or PCI,

including without limiting the foregoing, with regard to the Plan

specifications for the roof materials, an outdoor hot tub, interior

carpeting, kitchen cabinetry, staircase construction materials,

electrical design and installation, bathroom and shower design, patio

and driveway materials, size and capacity of garages, air conditioning compressors, lighting fixtures, design, installation and ventilation of fireplaces, and grade of the basement.

2.    David A. Katz submitted only two written change orders in compliance with the terms of ¶C5 of the Construction Contract, which were approved by the Cheatles, with respect to a four foot extension of the living room design and the selection of kitchen items; otherwise Katz is guilty of negligence, and/or reckless and wanton disregard of the Plan specifications, and/or, committed intentional acts of fraud and deceit through substitution of materials as described above and as further itemized in a spreadsheet titled **"Preliminary Report of Defects and Damages Assessment"** which is attached hereto, as a part hereof, marked Exhibit "4". In the aggregate, the current Damages Assessment described in Exhibit 4 amounts to $537,597.00.

D.    David A. Katz personally assured the Cheatles, represented and warranted, and consistent therewith, was and is contractually bound to the commitment that he and/or PCI were and would continue to be "fully" insured and would maintain agreed coverages for the benefit of the Cheatles, upon which the Cheatles reasonably relied. See ¶ E of the Construction Contract cited at ¶11B(6) above. Katz also agreed to add the Cheatles as additional insureds to his and PCI's coverages, agreed to cause each of his or PCI's

subcontractors to similarly procure and maintain specified insurance coverages, and agreed to provide the Cheatles certificates of insurance.

1.     despite repeated demands for the certificates and for copies of the insurance policies and for further assurances of the foregoing, Katz has failed to provide same and has misrepresented delivery of proof of coverage to the Cheatles' home mortgage lender

E.     David A. Katz personally assured the Cheatles, represented and warranted, and consistent therewith, was and is contractually bound to the commitment that they would benefit from contracting with him, their "next door neighbor"; that he was personally experienced in the business of construction management, particularly with respect to custom residential home construction; that his personal residence (the Katz Residence) and that of the Mullens (Lot 2) was indicative of the manner in which Katz and/or PCI would perform, and conform, to the Plans agreed upon by the Cheatles, thus serving as a "model" of the quality of labor and materials; and he contracted accordingly. David A. Katz and Dawn Katz each escorted the Cheatles through the Katz Residence as well as the Mullen home, prior to their signing of the Construction Contract and the Agreement..  See ¶ 4 of Agreement; and ¶¶A2, C6, G, H, and J of the Construction Contract cited at ¶¶11A(3), 11B(1), (4), (12), (13), and (15) above..

1.     to the contrary, Katz failed to supervise construction, repeatedly failed to attend or be present at the Home construction site, despite pre-

arrangements to do so; failed to coordinate and supervise subcontractors; failed to timely remit payments to subcontractors who provided labor and/or materials in connection with the construction of the Cheatles' Home; employed inexperienced and unskilled labor resulting in numerous and serious defects in the construction; and employed subcontractors for whom the work at the Cheatles Home construction site was not their primary employment but was "off hours" work resulting in services at night and/or weekends, all resulting in detriment to the Cheatles but economic gain to Katz and his spouse and/or PCI, and therefore, in the alternative, indirectly to Katz.

F.    David A. Katz personally assured the Cheatles and their son, represented and warranted prior to and as a material and purposeful inducement to the Cheatles execution of the Agreements, that the Cheatles' son would have direct key-assisted access to the basketball court installed at the Katz Residence; that Katz personally provided a key to Michael Cheatle for his access to the basketball court at times convenient to Michael; and the foregoing assurances, representations and warranties did induce the Cheatles not to purchase another lot from a third party real estate seller upon which the Cheatles had planned to install a rear-yard basketball court.

1.    notwithstanding, the Katz Residence has recently been listed for sale by the Katz; and, as a result of the disputes arising in connection with

the acts and omissions of Katz and/or PCI, as described herein, access to the basketball court on the Katz Residence is and continues to be denied and will be forever repudiated upon the sale of the Katz Residence, in material and spiteful violation of the assurances, representations, and warranties of Katz.  A true copy of the Listing Detail is attached hereto, as a part hereof, marked Exhibit "5".

G.   Katz personally assured the Cheatles, represented and warranted prior to and as a material inducement to the Cheatles' execution of the Agreements, and consistent therewith, was and is contractually bound to the commitment that the common elements, areas, and spaces of Paradise Pines or Drive, would be maintained and preserved by the Paradise Pines Homeowners Association; and the foregoing assurances, representations and warranties did induce the Cheatles to execute the Agreements; to remit specified assessments at the Closing under the Construction Contract; and, to pay and continue to pay monthly dues to the Katz and/or to the HOA.

1.   notwithstanding, Katz failed to record any HOA related documentation as required under and pursuant to Horsham Township Council's Resolution No. 96-68, paragraph 7, and that certain Agreement to Accept Conditions dated November 13, 1996, by and between David A. Katz and Horsham Township, paragraph 1(g); and, pursuant to the Pennsylvania Uniform Planned Community Act, more specifically

-23-

described in Count VIII below which renders the HOA a legal nullity; and in failing to do so, caused a defect and/or potential defect in the Cheatles' title to Lot 3 not to be insured by their title insurer at Closing, and have continued to collect HOA dues and assessments to the economic detriment of the Cheatles but to the economic advantage of the Katz and/or Paradise HOA.

H.    David A. Katz personally assured the Cheatles, represented and warranted, and consistent therewith, was and is contractually bound to the commitment, that they would be able to fully inspect the Home during and after completion of Construction and contracted for same.  See ¶¶ P3, 4 and 5 of the Construction Contract.

1.    Katz negligently and/or purposefully, hindered, delayed and/or deceived the Cheatles and as a result interfered with and frustrated their contractual right to confirm the use of specified materials and proper materials installation and construction techniques. Notwithstanding eight (8) closing punch lists, which are still not resolved in direct violation of the express warranty of Paragraph N of the Construction Agreement (see ¶11B(16) above), many of the defects described in Exhibit 4 were and continue to be latent and such as are now only ascertainable.  See ¶18 below and Exhibits "6" and "7" appended hereto.

2.    Notwithstanding the many delays in delivery of the Home, and on or

about July 25, 2001, Katz threatened to terminate his efforts under the Construction Contract; he cajoled the Cheatles into occupancy of the Home prior to the inspections required by Horsham Township to reduce the amount of expenses that he had agree to reimburse the Cheatles (see ¶12B1 above); and finally, Katz caused the Township to conduct an occupancy certificate inspection prior to the completion of unfinished work at the Cheatles' Home, all to the personal and economic detriment of the Cheatles, but to the economic gain of Katz, his spouse, and/or PCI, and therefore, in the alternative, indirectly to Katz.

3.    Upon information supplied by Township officials, and therefore believed to be true by the Cheatles, inspection of the Home would not disclose Katz' substitutions of inferior materials, shoddy but latent workmanship and installation techniques contrary to municipal and national industry codes, all to the personal and economic detriment of the Cheatles but to the economic gain of the Defendants.

I.    David A. Katz personally assured the Cheatles, represented and warranted, and consistent therewith, was and is contractually bound to the commitment, that he and/or PCI would provide the Cheatles with full warranty documentation relating to and covering their Home, including without limiting the foregoing, with particular regard to the Home roof, fireplaces, hot tub, rugs, heating systems, compressors and other mechanized devices, and

appliances.

1.  notwithstanding, and despite repeated requests and demands therefor, Katz and/or PCI and their subcontractors, have failed to provide such warranty documentation, in direct violation of Paragraph N2 of the Construction Contract cited at ¶12B(16) above.


### The Cheatle's Compliance with
### Terms and Conditions of Agreements

13.  The Cheatles as Buyer, and as intended occupant of the Home, performed In full compliance with the terms and conditions to be performed by the Cheatles under the Agreement and the Construction Contract,


### Katz and PCI's Fraud In The Inducement
### and Misrepresentations

14.  The foregoing assurances, representations, warranties and commitments described in Paragraph 12 above,  were made to the Cheatles with the intent to induce the Cheatles not to purchase other land they were considering for the construction of their home from an independent third party, but to enter into the Agreements to and for the benefit of the Defendants.

15.  The Cheatles believe, and therefore aver, that such representations were materially false and known to Katz to be false at the time they made them to the Cheatles, as Katz materially misrepresented:

A.    Their knowledge and skill as a General Contractor and construction manager of residential home construction;

B.    Their experience and skill in supervising subcontractors and coordinating on-site labor and delivery of specified materials in connection with residential custom family home design and/or construction and as pertaining to the Cheatles Land and improvements planned and built thereon;

C.    Their ownership and maintenance of insurance coverage specified in the Construction Contract which insurance coverage, upon information and belief and repeated demand upon the Defendants, was not and is not consistent with the requirements of the Construction Contract (see ¶E2 cited at ¶11B(6) above), or in the alternative, has not and never was procured and is not available to provide economic resources necessary to remediate the multiple defects, poor workmanship, failure to supervise and numerous breaches of contract more fully described herein;

D.    The single family residential home design in that Katz and/or PCI failed to conform to the Construction Contract Plans specifications, including without limiting the foregoing, by failing to adhere to Exhibit A-X: "House of The Nineties 54" Home design plans;

E.    The quality and conformance to the Plans of the materials Katz, PCI and/or his or their subcontractors, would procure and did procure but rather, negligently or knowingly, substituted inferior and non-specified materials and supplies without the knowledge or written authorization of the Cheatles;

F.    That the Home contracted for by the Cheatles would "fit" on the Land as an improvement and that the Home built in strict accordance with the Plans would meet all land use, building and safety code requirements of Horsham Township;

G.    That certain recreational facilities (basketball court) would be provided to the Cheatles for their use and their children's use tantamount to an easement running with the Land and with Katz' Lot 4, during and at all times while the Cheatles resided in their Home;

H.    The proper organization, existence and recordation under Horsham Township Council's Resolution No. 96-68 and the Uniform Planned Community Act (68 Pa.C.S.A. §5101, et seq.) of Paradise Pines Homeowners Association ("HOA") despite collecting HOA assessments from the Cheatles at the Closing and continuing to collect monthly HOA dues.

16.    As a result of the misrepresentations of the Defendants upon which the Cheatles reasonably relied, and as a result of Katz' failure to advise the Cheatles of the actual and true facts, the Cheatles have been and continue to be materially damaged and economically harmed.

17.    The Defendants are jointly and severally liable for the foregoing fraudulent misrepresentations, and David A. Katz and Dawn Katz are individually liable, and liable within the course and scope of their ownership, management, acts and/or omissions by and in furtherance of the business of each and every corporation named as defendant herein.

**Recent Events Precipitating The Cheatles'**
**Formal Claims**

18.     Despite the transmittal to Katz of eight (8) written "punch lists" prepared by the

Cheatles, including:  a letter dated July 25, 2001, hand delivered to David A. Katz

the day before the Closing date, and including a further list prepared at the Closing,

following by six (6) additional written lists submitted to Katz, the most recent dated

April 4, 2002 addressed to Katz' attorney, to which no response has been

forthcoming, the Cheatles have been continuously discovering additional defects,

shoddy workmanship, and substitution of inferior goods in lieu of specified materials

of which the Cheatles had no actual knowledge and which could not be visible to

them despite inspections of the Home.  As described in the punch lists and in

Exhibit "4" attached hereto, the Defendants' fraud, deceit, breaches of the

Agreement and Construction Contract and/or negligence, have resulted in uncured

defects, hazards, and potential hazards that render the Home unfit, and/or

potentially unfit, for habitation, and not in conformance with the Cheatles' Plans.

A.     By letter dated June 3, 2002 addressed to Mr. Cheatle by Stephen J. Pilch,

Code Enforcement Officer, Horsham Township, with a copy to "Builder

(Katz)", Horsham Township confirmed the results of a May 13, 2002

inspection by Mr. Pilch.  A true and correct copy of the letter by Mr. Pilch is

attached hereto, as a part hereof, marked Exhibit "6".  Mr. Pilch confirms

nineteen (19) violations which are more specifically noted on Exhibit "4"

attached hereto.  Mr. Pilch copied Katz to inform him "of the need to correct

the above deficiencies.  <u>Once corrections are completed a re-inspection of the work must be scheduled."</u>  (Emphasis in the original).

B.    Neither the Cheatles nor the Township, upon the Cheatles' information and belief, have received any response from Katz to Mr. Pilch's letter.

C.    By letter dated May 24, 2002, Joseph Halferty of Code Inspections, Inc., advised the Cheatles of the results of his re-inspection of the electrical work performed by Katz and/or their or PCI's subcontractors at the Home.  A true copy of Mr. Halferty's letter is attached hereto, as a part hereof, marked Exhibit "7".  Mr. Halferty identifies ten (10) "possible Code violations and concerns" in his letter including:

> *"Hot tub is in need of complete re-wiring and bonding"* and
>
> *"...a load calculation be taken on the small [electrical] sub panel in the basement."*

D.    The Cheatles believe and therefore aver, based upon information and advice from Township Code officials, that the foregoing Code violations and concerns, pose serious and continuing safety hazards and potential threats to their safety and continuing threats to their Home and property, which if not abated or remedied, will cause them economic harm and possibly irreparable injury.  In fact, portions of the Home and certain improvements, including without limitation, the hot tub and fireplaces, are not usable without risk of physical harm to their family and guests and to their Home and property.

## COUNT I

### Breach of Contract-Express and Implied
### Warranties and Terms
### Specific Performance - - Sale and Conveyance of Land

19.    The Cheatles incorporate by reference Paragraphs 1 through 18 above as though fully set forth herein at length.

20.    David A. Katz was and is a signator party to the Agreement, and PCI, as the alter ego of David A. and Dawn Katz by ownership, is specifically bound by the terms of the Agreement.  **See** Exhibit 1, ¶ 4 and Exhibit 2.

21.    The Defendants, jointly and/or severally, breached and failed to fulfill and perform the material terms and conditions of the Agreement and the Construction Contract, as provided therein.  In addition thereto, and/or in the alternative, by Katz and/or PCI's breaches and failures to fulfill and perform the express terms of the Agreements, they have jointly and severally breached the implied warranties applicable to residential home construction and sale.  Accordingly, the Cheatles are entitled to elect to specifically enforce the Agreement by a suit for specific performance and additional contractual and/or equitable relief.  See Exhibit 1, ¶6 cited above at Paragraph 11A(4).

22.    Katz's obligation to fulfill and perform the material terms and conditions of the Agreement was and remains unconditional.

23.    Katz's obligation to convey the Land so as to accommodate the Home for the Cheatles pursuant to the Plans was and is unconditional.  See Exhibit 1, ¶4 and Exhibit 2, ¶6, cited above at Paragraph 11B(19) above.

24.    Time was expressly of the essence in regard to the material obligations to be performed by Katz and PCI.  See Exhibit 1, ¶9.

25.    Despite the express provisions of the Agreement, particularly in connection with the construction of the Cheatle Home, pursuant to ¶ 4, Katz has repudiated the Cheatles' effort to seek their remedies despite repeated requests therefor, thus denying the Cheatles  the intended benefit of their purchase, use, and occupancy of the Land and of the proper construction of the proposed improvements thereon.

26.    The Cheatles seek to specifically enforce the Agreement and the Construction Contract by compelling Katz and PCI to proceed to compensate the Cheatles for the immediate remediation of the defects in the Land and in the improvements thereon, at the sole cost and expense of the Defendants.

27.    As a result of Katz and PCI's failure to perform under the terms,  conditions, and obligations of the Agreement, and of the Construction Contract, the Cheatles are entitled to also recover losses, liabilities, damages, and costs including counsel, engineering, accounting and other professional or expert fees incurred by reason of Katz and PCI's actions or non-actions.

WHEREFORE, the Cheatles seek an Order compelling an expedited hearing to address the Cheatles' request for immediate specific enforcement of the Agreement and Construction Contract including an expedited Order compelling Katz and PCI to proceed to remediate the defects or to compensate the Cheatles for the cost of remediation described herein and in Exhibit 4,  together with Defendants' payment of damages, losses, liabilities, costs, claims and all counsel, engineering, accounting and other professional

and expert fees and costs incurred or to be incurred by the Cheatles as a result of Defendants' acts or omissions and failure to perform their obligations under the Agreement and the Construction Contract, together with professional fees and costs in connection with this Action, and such other and further relief as the Court may deem appropriate.

### COUNT II
### Action For Declaratory Judgment
### Specific Performance Or, In The Alternative,
### Rescission And Recovery Of Funds Paid And Advanced

28.    The Cheatles incorporate by reference Paragraphs 1 through 27 above as though fully set forth herein.

29.    Katz and PCI collectively breached the Agreement and the Construction Contract.

30.    As a result of Katz and PCI's violation or failure to fulfill and perform material terms and conditions of the Agreements, resulting in breaches of express and implied warranties thereunder or relating thereto, and failure and refusal to proceed to remediate the defects as described herein, and in Exhibit "4", the Cheatles seek a declaration of rights that they are entitled **in the alternative**, to the return of all monies and other sums paid to Katz and reimbursement for all expenses under the Agreements, as well as any additional sums advanced or paid to PCI, and/or paid directly to PCI's subcontractors and material men, pursuant to the Construction Contract , and sums advanced or paid to the HOA, as well as sums paid by the Cheatles to third party contractors or materials suppliers, together with professional and expert fees and costs in connection with this Action, in exchange for their re-conveyance of title to the Land.

WHEREFORE, the Cheatles seek an Order compelling an expedited hearing to address the Cheatles request for immediate declaratory judgment entitling them to rescind the Agreement and the Construction Contract with Defendants; directing Defendants, in the alternative, to return all monies paid by the Cheatles, reimbursement of all expenses under the Agreement, all additional sums advanced or paid by the Cheatles pursuant to the  Construction Contract, or paid in their effort to remediate the Home, together with professional fees and costs in connection with this Action, and such other and further relief as this Court deems appropriate, in exchange for the Cheatles' execution of a special warranty deed over to David A. Katz or to his nominee.

## COUNT III
## Lis Pendens

31.    The Cheatles incorporate by reference Paragraphs 1 through 30 above as though fully set forth herein.

32.    Based upon the Cheatles' right to specifically enforce the Agreements, the Cheatles have entered or will enter simultaneously with the filing of this Action, on the record of title in Montgomery County, PA, two (2) duplicate Praecipes For Lis Pendens certifying that the Action within affects the title to the Land described in detail above, as well as the Katz's Lot 4, in view of the current effort by Katz to list and sell the Katz Residence.  True and correct copies of pre-filing forms of the Lis Pendens praecipes are attached hereto, as a part hereof, marked Exhibits "8" and "9".

WHEREFORE, Plaintiffs seek an Order compelling an expedited hearing to address

Plaintiffs requests for relief in the nature of specific performance of the Agreements or in the alternative, rescission,  with maintenance of the Lis Pendens until further Order of the Court.

## COUNT IV
## Violation of RICO Act

33.    The Cheatles incorporate by reference Paragraphs 1 through 32 above as though fully set forth herein.

34.    Defendants David A. Katz and Dawn Katz are each a "person" as that term is defined in 18 U.S.C. §1961(3).

35.    Defendants David A. Katz and Dawn Katz are each an officer, director, and/or shareholder, in the defendant corporate entities which collectively comprise the Paradise entities, as described hereinabove at Paragraph 3 (the "Paradise Enterprise").

36.    The Paradise Enterprise constitutes an "enterprise" as defined in 18 U.S.C. §1961(4).

37.    At all times relevant hereto, the Paradise Enterprise has been and is engaged in activities which affect interstate commerce.

38.    Defendants have engaged in a fraudulent scheme by and through the misconduct described hereinabove.

39.    Defendants have used the United States mails on two or more occasions within the preceding ten year period for the purpose of executing or attempting to execute a scheme to defraud as described in this Complaint in violation of 18 U.S.C. §1341.

The planning and execution of the aforementioned ongoing schemes to defraud involved and involve the use of the United States mails, including but not limited to:

A.    causing preparation of, executing, and mailing of Contract Documents and related writings to Horsham Township and to the Cheatles that misrepresented the Plans as well as the Defendants compliance therewith, relating to the Home construction; and

B.    causing the mailing of letters and financial documents to and from third parties, including the Cheatles' residential mortgage lender.

40.    Defendants have used the interstate telephone network on two or more occasions within the preceding ten year period for the purpose of executing or attempting to execute a scheme to defraud as described in this Complaint in violation of 18 U.S.C. §1343.

41.    At the times of the Defendants' fraud and deceit, the Cheatles were unaware that Defendants' representations were false and they relied on the foregoing representations to their detriment.

42.    Defendants knowingly and willfully caused the aforementioned uses of the United States mail and telephone calls in interstate commerce in furtherance of the schemes to defraud described in this Complaint in violation of 18 U.S.C. Sec. 1341 and Sec. 1343.

43.    The Cheatles cannot yet identify the exact dates of every mailing or telephone call in furtherance of Defendants' aforementioned schemes, nor the substance thereof, the parties thereto, or the precise manner in which Defendants caused such mailing

or telephone call to be made. Upon information and belief, such mailings and telephone calls were caused by Defendants and continue to be caused as Defendants continue to refuse to abate their fraud, deceit and breach of the Agreements constituting an indispensable part of the acts and omissions of Defendants in furtherance of the foregoing detriment to the Cheatles but economic gain to the Defendants.

44.    David A. and Dawn Katz have engaged in a pattern of racketeering activity to acquire, maintain, foster directly or indirectly, their interests in and economic gain in the Paradise Enterprise by the conduct alleged above in violation of 18 U.S.C. §1962(b).

45.    David A. and Dawn Katz are employed by and/or associated with the Paradise Enterprise which is engaged in and/or affects interstate commerce and have controlled, dominated, caused, conducted or participated, directly or indirectly, in the conduct of Paradise Enterprise's affairs through a pattern of racketeering activity as alleged herein in violation of 18 U.S.C. §1962(c).

46.    The acts of mail fraud and wire fraud by the Defendants are an integral part of the pattern of racketeering activity described in this Complaint.

47.    The Cheatles have been injured as a result of the Defendants' violation of the RICO Act and, as a result, are entitled to an award of treble damages, attorneys fees and costs against the Defendants in accordance with 18 U.S.C. §1964(c).

**COUNT V**
**Conversion**

48.   The Cheatles incorporate herein by reference Paragraphs 1 through 47 above as though fully set forth herein.

49.   By reason of the foregoing, Defendants intended to exercise dominion and/or control over property owned by the Cheatles.

50.   By reason of the foregoing, Defendants deprived the Cheatles of their property without their consent or lawful justification.

51.   By reason of the foregoing, Defendants converted the Cheatles' monies and property as set forth above and thereby damaged the Cheatles.

**WHEREFORE**, the Cheatles demand judgment in their favor, against Defendants, jointly and severally, and request that this Court grant relief by ordering the following:

A.   Defendants to produce within 10 days any and all invoices, cancelled checks, and other documentation evidencing all money, materials and goods that Defendants procured or diverted without authorization or reimbursement to the Cheatles.

B.   An accounting of the Paradise Enterprise to ascertain and confirm the monies and property that has been diverted, or converted, by Defendants' fraud, deceit, and breaches of the Agreements.

C.   Defendants to reimburse the Cheatles for all sums of money and cost of materials or goods necessary to remediate their Home;

D.   That the Cheatles be awarded their attorneys' fees and other professional or expert fees and costs incurred in connection with this Action;

E.   That the Cheatles be awarded interest on any monetary award; and

F.    Such other and additional relief as this Court deems just and appropriate.

## COUNT VI
## Unjust Enrichment

52.    The Cheatles incorporate by reference Paragraphs 1 through 51 as though fully set

forth herein.

53.    By reason of the foregoing, Defendants enjoyed the proceeds and profits derived

from the their fraud, deceit and breaches of the Agreements, and were unjustly

enriched thereby, causing damage to the Cheatles.

54.    The misconduct of the Defendants justifies the declaration of a constructive trust

comprised of the property, gains, money, proceeds and profits derived from the

aforementioned fraud, deceit and breaches and conversions of monies and property

of the Cheatles.

**WHEREFORE**, the Cheatles demand judgment in their favor, and against

Defendants, jointly and severally and request that this Court grant relief requested in

Counts I through V above.

## COUNT VII
## PA Uniform Trade Practices and
## Commercial Protection Law (UTPACPL)

55.    The Cheatles incorporate by reference Paragraphs 1 through 54 as though fully set

forth herein.

56.    As a result of the fraud, deceit and breaches of the express warranties contained

within the Agreements, and the implied warranties derived therefrom, including the

-39-

implied warranty of habitability, the Defendants have violated the provisions of the UTPACPL for which the Cheatles are entitled to protection thereunder and recovery as provided therein.

**WHEREFORE**, the Cheatles demand judgment in their favor, and against Defendants, jointly and severally and request that this Court grant relief as requested in Counts I through VI above.

### COUNT VIII
### Cheatles v. David A. and Dawn Katz and
### Paradise Pines Homeowners Association
### Derivative Action
### <u>Uniform Planned Community Act</u>

57.  The Cheatles incorporate by reference Paragraphs 1 through 56 as though fully set forth herein.

58.  The Cheatles have not ratified the actions or omissions of Defendants in regard to the negligence, failure to act, breaches and/or misconduct described hereinabove.

59.  The Cheatles have at various times requested that Defendants undo the fraud, deceit and breaches of the Agreements, conversion and/or negligence described above, but Defendants have, to date, refused to comply with such requests.

60.  Defendant Paradise HOA is unwilling and unable to take action to assert demands against David A. and Dawn Katz, and only by the Cheatles' claims and interposition of this Court can the rights of the Cheatles, and the HOA Corporation be properly managed and the individual Defendants' acts and omissions remedied.

61.  By reason of the foregoing, it is unnecessary to make any further demand upon the

HOA as such demand would be futile.

**WHEREFORE**, the Cheatles demand judgment in their favor and derivatively on behalf of the Defendant Paradise Pines Homeowners Association, against Defendants, David A. and Dawn Katz, and request that this Court grant full and complete relief as requested in the foregoing Counts I through VII, together with attorneys' fees and costs, and punitive damages as provided for under the Uniform Planned Community Act.

### COUNT IX
### Negligence

62.   The Cheatles incorporate by reference Paragraphs 1 through 61 as though fully set forth herein.

63.   Defendant are jointly and severally liable in tort for their simple negligence and/or reckless and wanton disregard of their contractual commitments and obligations, their negligent failure to supervise and coordinate the construction of the Home, all resulting in the economic loss, harm and personal injury, future loss and injury, and entitlement to indemnification and relief afforded by law, the Agreements and the insurance coverages available generally and/or pursuant to the express terms of Paragraph E2 of the Construction Contract (see ¶11B(6) above).

**WHEREFORE**, the Cheatles demand judgment in their favor, and against Defendants, jointly and severally and request that this Court grant relief as requested in Counts I through VIII above.


Dated: _____. 2002          By:_____

John C. Fenningham, Esquire
Attorney I.D. No. 22655
Maura F. Ratigan, Esquire
Attorney I.D. No. 79309
**CORR, STEVENS & FENNINGHAM**
Five Neshaminy Interplex, Suite 315
Trevose, Pa. 19053
(215) 639-4070
Attorneys for Plaintiffs,
Robert S. Cheatle, Jr. and Nancy A. Cheatle

## V E R I F I C A T I O N

I, ROBERT S. CHEATLE, JR., and NANCY A. CHEATLE, are individuals residing in the Commonwealth of Pennsylvania, and are authorized to make this verification. We verify that the facts set forth in the foregoing Complaint are true and correct to the best of our knowledge, information and belief. We understand that the statements made herein are subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

Dated: _____, 2002          _____

                                        ROBERT S. CHEATLE, JR.


                                        _____

                                        NANCY A. CHEATLE