IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROBERT S. CHEATLE, JR. and       :
NANCY A. CHEATLE, h/w            :
                                 :
          v.                     :
                                 :
DAVID A. KATZ and DAWN KATZ      :
          and                    :
PARADISE CONTRACTORS, INC.       :   CIVIL ACTION NO. 02-CV-4405
          and                    :
PARADISE PINES HOMEOWNERS        :
ASSOCIATION                      :
          and                    :
PARADISE MANAGEMENT GROUP,       :
INC.                             :
          and                    :
PARADISE DEVELOPMENT GROUP,      :
INC.                             :


ORDER


     AND NOW, this      day of           , 2002, IT IS
ORDERED that Defendants' Motion to Dismiss pursuant to F.R.C.P.
12(b)(6) is GRANTED with regard to plaintiffs' alleged federal
cause of action, and, IT IS FURTHER ORDERED that the remaining
claims are dismissed because the Court declines to exercise
supplemental jurisdiction over them, by reason of 28 U.S.C.
§1367(c)(3).

                         BY THE COURT:


                         _____
                                              U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROBERT S. CHEATLE, JR. and          :
NANCY A. CHEATLE, h/w               :
                                    :
          v.                        :
                                    :
DAVID A. KATZ and DAWN KATZ         :
          and                       :
PARADISE CONTRACTORS, INC.          :    CIVIL ACTION NO. 02-CV-4405
          and                       :
PARADISE PINES HOMEOWNERS           :
ASSOCIATION                         :
          and                       :
PARADISE MANAGEMENT GROUP,          :
INC.                                :
          and                       :
PARADISE DEVELOPMENT GROUP,         :
INC.                                :


DEFENDANTS' MOTION TO DISMISS


Defendants, by their attorneys, Vangrossi and
Recchuiti, move the Court to dismiss plaintiff's Complaint for
failure to state a claim upon which relief can be granted pursu-
ant to F.R.C.P. 12(b)(6), and to dismiss the remaining claims by
reason of 28 U.S.C. §1367(c)(3), or in the alternative to dismiss
the state law claims for failure to state a claim pursuant to
F.R.C.P. 12(b)(6), and in support aver:

1.  The sole federal claim asserted in this action
alleges a violation of the Racketeer Influenced Corrupt Organiza-
tions Act ("RICO"), 18 U.S.C. §1961 et seq.

2.   The representations and obligations upon which plaintiffs seek relief arise from a contractual relationship, specifically a contract to convey land, a contract to build a residence on that land, and possibly some related oral contracts.

3.   No RICO claim is stated because:

A.   The facts averred do not constitute a pattern of racketeering activity,

B.   The alleged predicate acts do not constitute mail fraud or wire fraud, and

C.   There are no sufficient allegations of an enterprise separate and apart from the defendants.

4.   Because there is no federal cause of action stated, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367(c)(3).

5.   There is no basis to impose liability on the individual defendants, David A. Katz and Dawn Katz.

6.   There are no facts averred to support liability of Paradise Pines Homeowners Association, Paradise Management Group, Inc. or Paradise Development Group, Inc.

7.   No claim for conversion, or for unjust enrichment and the imposition of a constructive trust is stated, because there was no misappropriation of specific property, only, at most, a breach of contract.

8.  There is no claim stated under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, because there are no facts averred that would support a claim of fraud.

9.  There is no claim stated under the Pennsylvania Uniform Planned Community Act, because that statute has only limited application to a four unit planned community, and no violation of any of the applicable provisions of that statute is stated.

10.  There is no claim for negligence stated, because the allegations relating to duties arise only from contracts.

WHEREFORE, defendants pray that plaintiffs' Complaint be dismissed.

VANGROSSI AND RECCHUITI


By_____
Francis Recchuiti, Esquire
Attorney I. D. No. 09284
319 Swede Street
Norristown PA  19401-4801
(610) 279-4306
(Attorneys for Defendants)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROBERT S. CHEATLE, JR. and        :
NANCY A. CHEATLE, h/w             :
                                  :
        v.                        :
                                  :
DAVID A. KATZ and DAWN KATZ       :
        and                       :
PARADISE CONTRACTORS, INC.        :    CIVIL ACTION NO. 02-CV-4405
        and                       :
PARADISE PINES HOMEOWNERS         :
ASSOCIATION                       :
        and                       :
PARADISE MANAGEMENT GROUP,        :
INC.                              :
        and                       :
PARADISE DEVELOPMENT GROUP,       :
INC.                              :


DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS


Introduction

        This is an action by Robert S. Cheatle, Jr. and his

wife, Nancy A. Cheatle, who purchased a lot from defendant, David

A. Katz, and contracted with Paradise Contractors, Inc., a

corporation of which Mr. Katz is President, for construction of a

home on that lot.  As the plaintiffs state in ¶1 of their Com-

plaint:

                "The primary purpose of this Action is to
                seek specific performance of both the Agree-
                ment and the Construction Contract; to compel
                remediation of multiple defects in the Land

> and in the construction of the Home, which
> defects are of a serious and compelling na-
> ture; and/or in the alternative, to seek
> rescission of the Agreement and the Construc-
> tion Contract, and the refund of all monies
> paid to Defendants by the Cheatles."

Although the Cheatles allege a number of purported causes of action, all the duties they assert exist, and all the representations they claim are false or fraudulent, arise from contracts.  Therefore, the most this case presents is an action for breach of contract by the Cheatles against the builder, Paradise Contractors, Inc.

<u>Allegations of Plaintiffs' Complaint</u>

The relationship between the parties arises from two written contracts:  an Agreement for the sale of land between the Cheatles and defendant David Katz, and a Construction Contract between the Cheatles and Paradise Contractors, Inc.  Copies are attached to plaintiffs' Complaint, which quotes from them at length in ¶11.  Defendant, David Katz, is described as a "signator-party" (¶20) who "individually and/or in behalf of himself and PCI" (¶10) entered into the Construction Contract, although that agreement (Exhibit 2 to the Complaint) on its face is between the Cheatles and Paradise Contractors, Inc.  It is signed at its end:  "Paradise Contractors, Inc. by: David Katz".

The Agreement for the sale of land (Exhibit 1 to the

2

Complaint) was executed on October 30, 2000.  (¶9)  Settlement
took place on July 26, 2001.  (¶12.B.)  The Construction Contract
(Exhibit 2 to the Complaint) was executed on August 6, 2000.

        The Complaint, in an apparent effort to do more than
allege breaches of contract, repeats the formula:

> "David A. Katz personally assured the
> Cheatles, represented and warranted, and
> consistent therewith, was and is contractu-
> ally bound . . ."  (Sub-paragraphs of ¶12)

The contractual obligations are asserted to be fraudulent repre-
sentations because, in the Cheatles' judgment, they were not
performed.  The allegations of ¶12, which set forth the "repre-
sentations" assert, in brief, that "defendants" promised:

> A.  To build the home in strict accordance with the
> plans, as required by ¶4 of the Agreement of Sale, and
> ¶¶A1 and 2 of the Construction Contract.
>
> B.  To complete the home no later than October 12,
> 2001, as required by ¶A4 of the construction contract,
> and a separate oral promise to coordinate the timing of
> closing and occupancy by giving three months notice of
> the anticipated completion date.
>
> C.  To construct the home in strict accordance with the
> plans and not make changes or substitutions without
> prior written consent as required by ¶¶A2 and C5 of the
> Construction Contract.
>
> D.  To provide full insurance as required by ¶E of the
> Construction Contract.
>
> E.  To provide a benefit to the Cheatles from contract-
> ing with their next door neighbor who was experienced
> in the business of construction management, and a
> promise that the property would conform to the quality

3

of construction in two homes shown to the Cheatles required by ¶4 of the Agreement of Sale, and ¶¶A2, C6, G, H and J of the Construction Contract.

F.  A personal, apparently oral promise, that the Cheatles' son would have access to the basketball court on the Katz' property.

G.  The common elements of the development would be completed, apparently an oral promise.

H.  The Cheatles could inspect the home during and after completion of construction, as required by ¶¶P3, 4 and 5 of the Construction Contract.

I.  Full warranty documentation for various parts of the house and fixtures would be provided, as required by ¶N2 of the Construction Contract.

Each sub-paragraph of ¶12, and ¶15 of the Complaint, recites the manner in which the Cheatles contend those promises were violated.  A detailed summary of these allegations is set forth in Appendix "A", attached to this Memorandum.  Those allegations are followed by a summary of "recent events", consisting of demands and alleged reports from inspectors that the property did not conform to contract, codes, and regulations. Those allegations are followed by nine counts, which will be discussed in the argument below.

4

<u>Argument</u>

I.   THE COMPLAINT DOES NOT STATE A CLAIM UNDER THE
RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT.

The defendants do not, at this time, dispute that the
Cheatles have alleged a breach of contract claim against defen-
dant, Paradise Construction, Inc.  For the reasons set forth in
this Memorandum, their claim under the Racketeer Influenced
Corrupt Organizations Act, the only federal claim asserted must
be dismissed.  A breach of contract is no more than a breach of
contract, not fraud, or some other tort or a RICO predicate act.

Breaches of contract do not give rise to a claim under
RICO.  <u>Annulli v. Panikkar</u>, 200 F.3d 189, 200 (3d Cir. 1999),
<u>abrogated on other grounds (statute of limitations)</u>, <u>Forbes v.
Eagleson</u>, 228 F.3d 471 (3d Cir. 2000) <u>cert. denied</u>, 533 U.S. 929
(2001); <u>McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc</u>., 904
F.2d 786, 791 (1st Cir.) <u>cert. denied</u>, 498 U.S. 992 (1990); <u>Heden
v. Hill</u>, 937 F. Supp. 1230, 1243 (S.D.Tex. 1996).  The Third
Circuit explained in <u>Annulli</u>:

> ". . . if garden-variety state law crimes,
> torts and contract breaches were to consti-
> tute predicate acts of racketeering (along
> with mail and wire fraud), civil RICO law,
> which is already a behemoth, would swallow
> state civil and criminal law whole.  Virtu-
> ally every litigant would have the incentive
> to file their breach of contract and tort
> claims under the federal civil RICO Act, as

5

> treble damages and attorneys fees would be in
> sight.  We will not read language into §1961
> to federalize every state tort, contract, and
> criminal law action."  200 F.3d at 200

RICO violations are described in 18 U.S.C. §1962.  Each subsection requires the existence of a "pattern of racketeering activity".  The statutory definition, 18 U.S.C. §1961(5), states only that a pattern of racketeering activity requires at least two acts of racketeering activity over a ten year period.  The United States Supreme Court furnished a more complete definition in H. J., Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 106 L.Ed.2d 195, 109 S.Ct. 2893 (1989):

> "In our view, Congress had a more natural and
> common sense approach to RICO's pattern ele-
> ment in mind, intending a more stringent
> requirement than proof simply of two predi-
> cates, but also envisioning a concept of
> sufficient breadth that it might encompass
> multiple predicates within a single scheme
> that were related and that amounted to, or
> threatened the likelihood of, continued crim-
> inal activity."  492 U.S. at 237

The Supreme Court concluded that "pattern" means more than just a multiplicity of acts.  Congress intended a flexible approach, requiring both continuity and a relationship.  The Court held:

> "To establish a RICO pattern it must also be
> shown that the predicates themselves amount
> to, or that they otherwise constitute a
> threat of, continuing racketeering activity.
> . . ."  492 U.S. at 240  [emphasis by the
> Court]

6

The Court further explained:

> "'Continuity' is both a closed- and
> open-ended concept, referring either to a
> closed period of repeated conduct, or to past
> conduct that by its nature projects into the
> future with a threat of repetition. . . .
> It is, in either case, centrally a temporal
> concept - and particularly so in the RICO
> context, where <u>what</u> must be continuous,
> RICO's predicate acts or offenses, and the
> <u>relationship</u> those predicates must bear one
> to another, are distinct requirements.  A
> party alleging a RICO violation may demon-
> strate continuity over a closed period by
> proving a series of related predicates ex-
> tending over a substantial period of time.
> Predicate acts extending over a few weeks or
> months and threatening no future criminal
> conduct do not satisfy this requirement:
> Congress was concerned in RICO with long-term
> criminal conduct. . . ."  492 U.S. at 241-
> 242  [emphasis by the Court - citation omit-
> ted]

In <u>Kehr Packages, Inc. v. Fidelcor</u>, 926 F.2d 1406 (3d

Cir.) <u>cert. denied</u>, 501 U.S. 1222 (1991), the Third Circuit found

a pattern of racketeering activity was lacking, and upheld an

order dismissing plaintiff's complaint for failure to state a

claim.  That case arose from a leveraged buyout of Kehr Packages

by James and Charles McMurtrie, financed by defendant Fidelcor.

The plaintiffs asserted that several employees of the bank

promised to extend a line of credit, but ultimately failed to do

so, resulting in the failure, and eventual bankruptcy of Kehr.

This conduct consisted of a series of alleged acts beginning with

7

the purchase, and extending through Fidelity's direction to Kehr in September 1988 to cease its operations and liquidate its assets.  It involved numerous alleged promises to extend credit and failures to do so, and requests for a workout plan Fidelcor never intended to allow to be implemented.

The Third Circuit reviewed the elements of each subsection of 18 U.S.C. §1962.  Since the present Complaint addresses only subsections (b) and (c), we will discuss only those.  Under subsection (b), the plaintiff is required to allege a specific nexus between control of a named enterprise and the alleged racketeering activity.  Under subsection (c), there is no nexus requirement, but there must be conduct of the affairs of an enterprise through a pattern of racketeering activity.

The Court followed H. J. Inc.'s requirement that the continuity either involves a closed period of repeated conduct, or past conduct that, by its nature, projects into the future with a threat of repetition.  The Third Circuit held:

> "Thus, although a single fraudulent scheme can give rise to RICO liability, when that scheme is short-lived and directed at a limited number of people, this court has required some further indication that the defendant's fraudulent activities are likely to continue."

To reach this determination, it is necessary to look at the predicate acts, in that case and this, alleged mail fraud and

8

wire fraud in violation of 18 U.S.C. §§1341 and 1343.  Because
mailing is required, but may be only incidental to the fraudulent
scheme, the Court must examine the alleged scheme itself to
determine whether continuity exists.  In that case there was only
a short-term attempt to force a single entity into bankruptcy.
The alleged misrepresentations were limited in time, and the
Court concluded that the relevant 8-month period of fraudulent
activity directed at a single entity did not constitute a pat-
tern, absent a threat of future criminal acts.

        Although the alleged conduct in this case extended over
a longer period of time, it was directed only to the sale and
construction of a single home, purportedly harming no more than
the two purchasers of that home (and their basketball court
deprived son).  Based on Kehr Packages, the allegations of a
pattern of racketeering activity made by the Cheatles are insuf-
ficient.  Further, for the reasons discussed below, there is no
fraud, but merely the breach of promises to do something in the
future.  Breaches of contract cannot be predicate acts under
RICO.

        Tabas v. Tabas, 47 F.3d 1280 (3d Cir.) cert. denied,
(1995) limited some Third Circuit RICO cases, but cited Kehr
Packages with approval on several occasions, and followed that
decision.  Although Tabas had only a small number of victims, the

9

Estate of Charles Tabas and its beneficiaries, it involved three and one-half years' use of partnership assets and income by the surviving partner who concealed his conduct with numerous false reports.

In <u>Delaware Trust Company v. Lal</u>, 1998 WL 833854 (E.D. Pa. 1998) <u>aff'd without opinion</u>, 229 F.3d 1137 (3d Cir. 2000) (Hutton, J.), this Court dismissed a RICO counterclaim for lack of a nexus between the control of a named enterprise and the failure to produce evidence of the predicate acts of mail fraud. In so ruling, this Court noted that fraud must consist of a misrepresentation, a fraudulent utterance of it, intention by the maker that the recipient will thereby be induced to act, justifiable reliance by the recipient upon the misrepresentation, and damage to the recipient as a proximate result. There was lacking both a specific nexus between the control of the named enterprise with the alleged racketeering activity, and a failure to establish the requisite predicate acts.

In <u>Kirschner v. Castello</u>, 1992 WL 6758 (E.D. Pa. 1992) (Hutton, J.), this Court followed the ruling in <u>Kehr Packages</u> and ruled that a pattern of racketeering activity was not alleged where there was no indication that the defendant's fraudulent activities were likely to continue. So, too, in this case, there are no facts that are legally sufficient to establish continuity.

The Complaint must also be dismissed insofar as it purports to aver a claim under 18 U.S.C. §1962(c), because the named corporate defendants are also alleged to constitute the enterprise.  A person cannot be both a person and an enterprise under subsection (c), and the enterprise must extend beyond the alleged pattern of racketeering activity.  Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808 (8th Cir. 1992); Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339 (2d Cir. 1994); Shared Diagnostic Services, Inc. v. Henningsen, 602 F. Supp. 428 (E.D. Pa. 1984).

Since no RICO claim is asserted, it is appropriate to dismiss the entire action at this time.  28 U.S.C. §1367(c)(1); Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).  The remaining arguments need not be addressed unless this Court retains jurisdiction over the state law claims.

II.  NO CLAIM ARISING FROM CONTRACT MAY BE ASSERTED AGAINST ANY DEFENDANT OTHER THAN PARADISE CONTRACTORS, INC.

Aside from the claims of liability under RICO, the Cheatles seek to hold the individual defendants liable under the construction contract because of their positions as officers, owners or persons who somehow benefitted from that company's conduct.  In effect, plaintiffs are seeking to pierce the corpo-

11

rate veil. Under Pennsylvania law a corporation is regarded as an independent entity even if its stock is owned entirely by one person. Lumax Industries, Inc. v. Aultman, 543 Pa. 38, 669 A.2d 893, 895 (1995). In Lumax the Supreme Court of Pennsylvania held that to pierce the corporate veil specific facts must be averred which demonstrate undercapitalization, the failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of a corporate form to perpetrate a fraud.

In First Realvest, Inc. v. Avery Builders, 410 Pa. Super 572, 600 A.2d 601 (1991), the Superior Court of Pennsylvania affirmed an order sustaining a demurrer to a complaint which sought to pierce the corporate veil in an action by a builder against a developer to recover the balance allegedly due for services. The developer filed a counter-claim against the corporate builder, and a separate suit against the owners of the corporation, otherwise identical to the counterclaim. The Court noted that the allegations supporting the claim for personal liability were general, and held assertions that the corporation was formed by the shareholders for their own business, that the parties intermingled funds, diverted corporate funds to their own use, and treated the corporation as an individual proprietorship, were insuffi-cient to state a cause of action, explaining:

> "The contents of this paragraph are not sufficient
> to support the extreme remedy of piercing the
> corporate veil. All corporations are formed for
> the benefit of their shareholders and the share-
> holders draw out profits. It is ridiculous to say

12

> that the corporate form should be abandoned be-
> cause a shareholder drew out funds, such a conclu-
> sion would render the corporate form useless.
> Whether or not the corporation is treated as a
> sole proprietorship or as an alter ego requires a
> conclusion of law and is not properly considered
> here.  Further, there are no facts pled here to
> support such a conclusion."  600 A.2d at 604

David Katz was a party to the Agreement of Sale, but only a single violation of that agreement is alleged, the failure of the ground to accommodate the house as originally designed.  (Complaint ¶¶11.A, 15.F)  This claim cannot be sustained, because promises contained in a contract for the sale of real estate are merged in and do not survive the conveyance of the property by deed.  E.g., Kiec v. Sherrerd, 564 Pa. 70, 764 A.2d 39 (2001).

Aside from their role as parts of the purported RICO enter-prise, there are no allegations of wrongdoing by the corporate defen-dants, Paradise Homeowners Association, Paradise Management Group, Inc., or Paradise Development Group, Inc.  Therefore, no claims have been stated against any of these individuals or entities.

III.  NO CLAIM IS STATED FOR CONVERSION OR UNJUST ENRICHMENT.

In Count V of the Complaint the Cheatles assert conversion by the allegations "set forth above".  (¶51)  This conversion would appear to be of the money paid for the house and land.  There is also an assertion in Court VI of unjust enrichment by plaintiffs profiting from this transaction which is said to justify the imposition of a constructive trust.  Neither Count states a basis for relief.

13

A claim of conversion is not made out where there is an alleged failure to pay or comply with a contractual obligation. A breach of contract action does not support an action in conversion. <u>Montgomery v. Federal Insurance Co</u>., 836 F. Supp. 292 (E.D. Pa. 1993). A constructive trust cannot be imposed unless one holding title to property is subject to an equitable duty to convey it to another. <u>Belazick v. Ireton</u>, 518 Pa. 127, 541 A.2d 1130 (1988). When money is received and a claim is made that there is an obligation to pay it to the payor or a third person, only a debt is created, and that relationship does not give rise to a constructive trust. <u>Snyder v. First National Bank of Pen Argyl</u>, 59 D.& C.2d 187 (C.P. Northampton Cty. 1973).

IV.  NO CLAIM HAS BEEN STATED FOR VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW NOR FOR FRAUD OR NEGLIGENCE.

Count VII of the Complaint, purports to assert violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 <u>et seq</u>.. The facts pleaded do not support such a claim. The mere failure to fulfil a customer's expectations is not a violation of this statute. <u>Burkholder v. Cherry</u>, 414 Pa. Super. 432, 607 A.2d 745 (1992).[1]  Under the

---

[1]This decision contains language that suggest an assertion of special skill may call for a different result. Although the Cheatles allege that David Katz touted his experience, the only harm they allege resulted from the failure to perform contractual

14

catch-all provision of the Act prohibiting "other" unfair or deceptive practices, it is necessary to prove all the elements of fraud. <u>Hammer v. Nikol</u>, 659 A.2d 617, 619-620 (Pa. Cmwlth. 1995); <u>Giangreco v. United States Life Insurance Co</u>., 168 F. Supp. 2d 417, 424 (E.D. Pa. 2001).

Fraud is established by proof of a material misrepresentation of an existing fact, knowledge of falsity, justifiable reliance on the misrepresentation, and damages. <u>Hammer v. Nikol</u>, 659 A.2d 617, 619-620 (Pa. Cmwlth. 1995); <u>Delaware Trust Company v. Lal</u>, 1998 WL 833854 (E.D. Pa. 1998) (Hutton, J.). Breach of a promise to do something in the future, such as to comply with a contractual obligation, is not fraud. <u>Krause v. Great Lakes Holdings, Inc</u>., 387 Pa. Super. 56, 563 A.2d 1182, 1187-1188 (1989) <u>allocatur denied</u>, 524 Pa. 629, 574 A.2d 70 (1990); <u>Huddleston v. Infertility Center of America, Inc</u>., 700 A.2d 453, 461 (Pa. Super. 1997).

In <u>Krause</u> a number of claims were presented arising out of the breach of agreements to pay debts. The fraud claims were predicated on oral and written agreements to assume responsibility for payment of obligations under an instalment note, in exchange for which plaintiffs agreed to accept a suspension of

---

obligations of Paradise Contractors, Inc.

15

payments.  It was alleged that this promise was false, and was known to be false by the defendant at the time it was made.  The Superior Court affirmed the Order granting summary judgment on the fraud counts.  The Court explained:

> "Appellants contend that the allegedly fraudulent act was the oral representation by Jay Pritzker at the November 14, 1979 meeting that GL would assume the obligation for PPC's debt to appellants in return for a three year moratorium on payments and appellants' forbearance from immediate legal action.  The oral representation of Mr. Pritzker constitutes a promise to do something in the future.  As such, it is not a proper basis for a cause of action for fraud.  . . .  It is well-established that a cause of action for fraud must allege a misrepresentation of a past or present material fact.  . . .  Appellants' argument that the basis of Count III is non-disclosure or concealment of material facts ignores the fact that the oral statement by Jay Pritzker on which appellants rely as the basis for their fraud claim is an oral promise not [merely] a misrepresentation.  . . .  Mr. Pritzker's alleged oral statement was a <u>promise</u> to do something in <u>exchange</u> for something in return.  His statement would not qualify as an act of fraud."  563 A.2d at 1187-1188 [emphasis by the Court]

Plaintiffs will probably rely on dicta from <u>Horowitz v. Federal Kemper Life Assurance Company</u>, 57 F.3d 300 (3d Cir. 1995), that improper performance of a contractual obligation states a claim under the Unfair Trade Practices and Consumer Protection Law.  In making that statement, the Third Circuit cited <u>Gordon v. Pennsylvania Blue Shield</u>, 378 Pa. Super. 256, 548

16

A.2d 600 (1988), which relied on <u>Raab v. Keystone Insurance Company</u>, 271 Pa. Super. 185, 412 A.2d 638 (1978).

<u>Raab</u> is one of a line of cases rejected by the Superior Court in <u>Phico Insurance Company v. Presbyterian Medical Services Corporation</u>, 444 Pa. Super. 221, 663 A.2d 753 (1995). The Court held that in order to constitute a tort the contract must be collateral, not the source of the duty. If the duty arises from contract, only an action for breach of contract lies.

In <u>Caudill Seed and Warehouse Company v. Prophet 21, Inc</u>., 123 F. Supp. 2d 826 (E.D. Pa. 2000), the Honorable Lowell A. Reed, Jr. of this Court predicted that the Pennsylvania Supreme Court would reject the misfeasance/nonfeasance distinc-tion and follow <u>Phico</u>. Therefore, not only can there be no claim under the Unfair Trade Practices and Consumer Protection Law for misfeasance under a contract, the purported negligence claims alleged in Count IX cannot be maintained because they involve duties that arise only from contracts.

V.   THERE IS NO VIOLATION OF THE PENNSYLVANIA UNIFORM PLANNED COMMUNITY ACT BASED ON THE FACTS AVERRED.

The Complaint alleges that this property is part of a four lot subdivision known as "Paradise Pines" or "Paradise Drive". (¶2)  The Pennsylvania Uniform Planned Community Act is

17

of limited applicability to planned communities with fewer than twelve units.  68 Pa.C.S. §5102(a) provides:

> "(a) General rule.-- This subpart applies to all planned communities created within this Commonwealth after the effective date of this subpart; but, if:
>
> (1) such a planned community contains no more than 12 units and is not subject to any rights under section 5215 (relating to subdivision or conversion of units) to subdivide units or to convert into common elements or under section 5211 (relating to conversion and expansion of flexible planned communities) to add additional real estate, create units of limited common elements within convertible real estate or withdraw real estate, it is subject only to sections 5105 (relating to separate titles and taxation), 5106 (relating to applicability of local ordinances, regulations and building codes), 5107 (relating to eminent domain) and 5218 (relating to easement to facilitate completion, conversion and expansion) unless the declaration provides that the entire subpart is applicable; . . ."

The referenced sections have no apparent applicability to anything alleged in this case.  That claim must also be dismissed.[2]

---

[2]Count III is titled "Lis Pendens", which is not a cause of action by an interim, <u>ex parte</u>, remedy.  A separate Motion to Strike the lis pendens, which the Cheatles have already indexed in Montgomery County, will be filed shortly after this Motion.

18

## Conclusion

We end as we began, quoting ¶1 of the Complaint:

"The primary purpose of this Action is to
seek specific performance of both the Agree-
ment and the Construction Contract; to compel
remediation of multiple defects in the Land
and in the construction of the Home, which
defects are of a serious and compelling na-
ture; and/or in the alternative, to seek
rescission of the Agreement and the Construc-
tion Contract, and the refund of all monies
paid to Defendants by the Cheatles."

For this, and for the foregoing reasons, plaintiffs' Complaint

should be dismissed.


VANGROSSI AND RECCHUITI


By_____
Francis Recchuiti, Esquire
Attorney I. D. No. 09284
319 Swede Street
Norristown PA  19401-4801
(610) 279-4306
(Attorneys for Defendants)

Appendix "A"
Allegations of "Fraud" in Plaintiffs' Complaint


¶ 4  David represented self directly to Cheatles as experienced
     in selling residential subdivided lots

¶ 5  David represented self directly to Cheatles as experienced
     in general contracting business of custom residential home
     construction

¶12A David assured, represented, warranted and was contractually
     bound to commitment that land would accommodate the home to
     be built in strict accordance with plans but

          land use restrictions addressing pervious to impervious
          ratios precluded construction in accordance with plans
          (and this should have been known to Katz, as experi-
          enced builder and developer and from similar issues at
          the Katz home)

          a variance was required, which Katz failed to obtain in
          violation of ¶4 of Agreement of Sale and ¶D of con-
          struction contract

          Altered design and ignored plans and substituted dif-
          ferent design plans without knowledge and consent

¶12B David assured, represented, and warranted and was contractu-
     ally bound to complete no later than October 12, 2001, and
     would coordinate timing of closing and occupancy by 3 months
     prior notice of anticipated date of construction so Cheatles
     could sell their prior residence in orderly manner but

          with an agreed two month extension of original 8/30/01
          closing date Katz failed to supervise delivery of labor
          and materials to Cheatle's home but prioritized labor
          at Mullen Lot to construct and install a pool and
          cabana using Cheatle's lot for access

          failed to coordinate timing of completion of construc-
          tion

          failed to give Cheatles accurate and reliable advance
          notice

          delayed closing on home until 7/26/01 (three months

beyond original closing date)

forced Cheatles to rent hotel rooms after their home was sold, and incurred expenses "for which Katz agreed to reimburse the Cheatles but for which they have refused to honor their contractual obligations and personal commitment", costing construction loan interest of $12,504.51, mortgage placement fee of $10,000, labor to move furniture from garage to Home $850, labor to move furniture to garage $900, twenty-five days' hotel expenses $3,400.

For applicability of 1 year warranty home completed on 8/22/02, date of issuance of Certificate of Occupancy

¶12C David assured, represented, and warranted and was contractually bound to construct and deliver home in strict accordance with plans, and make no change without prior written consent, but

David negligently failed to supervise subcontractors, misrepresented intentions, acts or omission, during construction by substituting materials of lesser quality than specified, to detriment of Cheatles and gain of David, Dawn or PCI relating to roof materials, hot tub, carpeting, kitchen cabinetry, staircase construction materials, electrical design and installation, bathroom and shower design, patio and driveway materials, size and capacity of garages, air conditioning compressors, lighting fixtures, design, installation and ventilation of fireplaces and grade of basement

David submitted only two written change orders under ¶5C of Construction Contract which were approved by Cheatles, with respect to a 4' extension of living room design and selection of kitchen items; otherwise guilty of negligence, and/or reckless and wanton disregard of plans and specifications and/or committed intentional acts of fraud and deceit through substitution of materials and as itemized in Spreadsheet attached as Exhibit "4", damages assessed at $537,597.

¶12D David assured, represented, and warranted and was contractually bound by commitment "he and/or PCI" were to be fully insured and would maintain coverages for benefit of Cheatles

2

and agreed to add Cheatles as additional insureds and have
subcontractors do so but has failed to provide certificates
and copies of the policies and misrepresented delivery of
proof of coverage to Cheatles' home mortgage lender.

¶12E David assured represented and warranted and was contractu-
ally bound that Cheatles would benefit from contracting with
"their next door neighbor", that he was personally experi-
enced with construction management of custom residential
home construction, that his and Mullen residence were indic-
ative of manner in which he or PCI would perform, and con-
form to Plans, serving as a model and he contracted accord-
ingly, David and Dawn showed Cheatles through their home and
Mullen home prior to signing agreements but

> failed to supervise construction, failed to be present
> at the construction site despite prearrangements to do
> so, failed to coordinate and supervise subcontractors,
> failed to timely remit payment to subcontractors and
> suppliers, employed experienced and unskilled labor
> resulting in numerous and serious defects in construc-
> tion and employed subcontractors who had other primary
> employment and worked off hours on nights and weekends
> resulting in (unstated) detriment to the Cheatles but
> gain to David, his spouse and/or PCI, and indirectly to
> David.

¶12F David assured Cheatles and their son, represented and war-
ranted as a material and purposefully inducement to the
Cheatles's execution of the agreement that Cheatle's son
would have direct key-assisted access to a basketball court
at Katz residence, that they provided a key, and induced the
Cheatles not to purchase from another seller land upon which
they intended to install a rear yard basketball court but

> listed their residence for sale, and as a result of
> these disputes described in the complaint denied access
> to the basketball court and will be forever repudiated
> upon sale "in material and spiteful violation" of the
> assurances, representations and warranties.

¶12G David assured, represented, and warranted and as material
inducement and was contractually bound that common elements
would be maintained by Paradise Pines Homeowners Associa-
tion, which induced the Cheatles to sign the agreement and

3

remit assessments at closing and continue to pay monthly
dues "to the Katz and/or to the HOA" but

failed to record HOA related documentation as required
by Township resolutions and agreement with Township and
pursuant to Pennsylvania Uniform Planned Community Act,
which renders the HOA a legal nullity, and in failing
to do so caused a defect or potential defect in the
Cheatle's title to Lot 3 not to be insured by their
title insurer and have continued to collect HOA dues
and assessments to economic detriment of Cheatles but
to economic advantage of "the Katz and/or Paradise
HOA".

¶12H David assured, represented, and warranted and was contractu-
ally bound that Cheatles would be able to fully inspect home
during and after completion and contract for this, but

negligently and/or purposefully, hindered, delayed or
deceived the Cheatles and hindered and frustrated their
contractual right to confirm use of specified materials
and proper installation and construction techniques,
notwithstanding eight closing punch lists are not
resolved in violation of the warranty of ¶N of con-
struction agreement, many of which were latent and are
only now ascertainable

notwithstanding many delays in delivery of home, and on
7/25/01 David threatened to terminate his efforts under
the construction contract, cajoled Cheatles into occu-
pancy prior to inspections required by Township to
reduce amount of expenses David had agreed to reimburse
the Cheatles and caused Township to conduct occupancy
certificate inspection prior to completion of unfin-
ished work, to personal and economic detriment of
Cheatles but to economic gain of David, his spouse
and/or PCI and therefore in the alternative indirectly
to Katz

Based on information from Township officials inspection
of home would not reveal substitutions of inferior
materials, shoddy but latent workmanship and installa-
tion techniques contrary to municipal and industry
codes to personal and economic detriment of the
Cheatles but to economic gain of the defendants.

4

¶12I David assured represented and warranted and was contractu-
ally bound that he and/or PCI would provide Cheatles with
full warranty documentation relating to and covering their
home, with regard to roof, fireplaces, hot tub, rugs, heat-
ing systems, compressors and other mechanized devices and
appliances but

    despite demands have failed to provided the warranty
    documentation in violation of ¶N2 of the Construction
    Contract

¶14  All in ¶12 made with intent to induce Cheatles not to pur-
chase other land they were considering but to enter into
agreements for benefit of defendants

¶15  Following were false and known to David to be false:

    A.  Knowledge and skills and general contractor and con-
    struction manager of residential home construction

    B.  Experience and skill in supervising subcontractors and
    coordinating on-site labor and delivery of materials in
    connection with residential construction and as pertaining
    to Cheatles' home

    C.  Ownership and maintenance of insurance coverage was not
    consistent with requirements of construction contract or was
    not procured and is not available to provide economic re-
    sources to remediate the defects, poor workmanship, failure
    to supervise and numerous breaches of contract

    D.  Home failed to conform to contract plans and specifica-
    tions including "House of the Nineties 54 Home design plans"

    E.  Quality and conformance to plans but substituted infe-
    rior and non-specified materials without knowledge or writ-
    ten authorization of the Cheatles

    F.  Home would fit on land and as built in accordance with
    plans, would meet all land use, building and safety codes of
    Horsham Township

    G.  Basketball court would be provided for use of Cheatles'
    and their children, "tantamount to an easement running with
    the land and with Katz' Lot 4 during and at all times while

5

the Cheatles resided in their home"

H.  Homeowners' Association had proper organization, exis-
tence and recordation under Horsham Resolution 96-68 and
Uniform Planned Community Act despite collecting assessments
from Cheatles and continuing to collect monthly dues.

<u>CERTIFICATE OF SERVICE</u>

I, FRANCIS RECCHUITI, Esquire, hereby certify that on the date set forth below a true and correct copy of the foregoing document was served upon the following counsel in the manner indicated below.

Service by first class mail, as follows:

John C. Fenningham, Esquire
Maura F. Ratigan, Esquire
Corr, Stevens & Fenningham
Suite 315, 5 Neshaminy Interplex
Trevose PA  19053
(Attorneys for Plaintiff)

_____
Francis Recchuiti, Esquire
Attorney for Defendants

Date:  August 13, 2002