F:\WP\WORK\RTG\CHEATLE2.MOL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT S. CHEATLE, JR. and NANCY A.** | : | **CIVIL ACTION NO.** |
| **CHEATLE, husband and wife** | : | **02-CV-4405** |
| | : | |
| vs. | : | |
| | : | |
| **DAVID A. KATZ and DAWN KATZ** | : | |
| and | : | |
| **PARADISE CONTRACTORS, INC.** | : | |
| and | : | |
| **PARADISE PINES HOMEOWNERS** | : | |
| **ASSOCIATION** | : | |
| and | : | |
| **PARADISE MANAGEMENT GROUP, INC.** | : | |
| and | : | |
| **PARADISE DEVELOPMENT GROUP, INC.** | : | |

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, Robert S. Cheatle, Jr. and Nancy A. Cheatle, husband and wife, by and through their undersigned counsel, hereby respectfully submit this Memorandum of Law in opposition to Defendants' Motion to Dismiss and in support of Plaintiffs' request for an entry of an Order denying Defendants' Motion to Dismiss.

## I.    INTRODUCTION

It is surprising that the Defendants have, in part, sought to divert attention from the specific allegations set forth within the Complaint, which allegations have been organized in a carefully drawn fashion, and exceed the notice pleading requirements, and satisfy the fraud requirements of pleading with particularity. These averments illustrate how the Plaintiffs' anticipated joy of purchasing a parcel of land upon which their custom dream house would be

1

constructed turned into a nightmare of frustration, anxiety, and ultimate resort to formal legal action to seek relief for the fraud and deceit and resulting unsafe construction conditions as well as money damages incurred and to be incurred, that presently remain unabated but for the mitigating actions being undertaken by the Plaintiffs.  Though disclaiming otherwise, the Defendants' basic posture, despite the specific allegations set forth in the Complaint, is that the Plaintiffs should be left to pursue a mere breach of contract action, ***notwithstanding*** the compelling nature of the active fraud and deceit perpetrated by the individual Defendants, ***notwithstanding*** the poor and inferior workmanship, ***notwithstanding*** the resulting code violations and deficiencies noted by the municipal authorities having jurisdiction, and ***notwithstanding*** the plain language of the Agreement with regard to the realty purchase, and the Contract relating to the construction of their home.  For example, Defendants assert the bar of claims under the Agreement by virtue of the "merger" doctrine.  See Defs. Mem. at page 13. Defendants ignore Paragraph P6 of the Construction Contract (Exhibit 2) which expressly provides that the *"terms, conditions, rights and obligations in the Contract, and all other attachments thereto, shall survive . . . and this Agreement shall not be deemed to be merged . . . ."*  See Compl. ¶ 11B(19); Ex. 2 (emphasis added).  Clearly, either the Defendants do not understand the meaning and intent of this provision, or they seek to evade the implications of the survival of their promises and obligations!

Plaintiffs plead a RICO and common law fraud action because the facts and law support same.  Plaintiffs address the points of Defendants' Motion to Dismiss seriatim below.

2

## II.    FACTUAL BACKGROUND

The facts of this case are set forth in Plaintiffs' Complaint and attached Exhibits, which are incorporated herein.  For the convenience of the Court, these facts are summarized here.

Plaintiffs Robert and Nancy Cheatle are purchasing signator parties to a certain Construction Contract dated August 6, 2000 (hereinafter "Construction Contract"), and an Agreement to Sell Real Estate dated October 30, 2000 (hereinafter "Agreement") for the ultimate construction of their dream home located in Ambler, Pennsylvania.  David Katz, individually (Land sale), and individually again with one of the four (4) corporate entities created between August 4, 2000, and April 2001, contracted with the Plaintiffs to construct for the Plaintiffs a new home.  Each of the corporate entities named in Plaintiffs' Complaint is completely owned by David and Dawn Katz.  The individual and corporate entities named in the Complaint collectively comprise the "Paradise Enterprise."  See Compl. ¶¶ 3, 35.

Through the Paradise Enterprise, Defendants David and Dawn Katz have engaged in the following acts of misconduct:

A.    planning and execution of ongoing schemes over a two year period to defraud Plaintiffs, including, but not limited to,

1.    materially misrepresenting their knowledge and skill as a General Contractor and construction manager of residential home construction;

2.    materially misrepresenting their experience and skill in supervising subcontractors and materialmen, and coordinating on-site labor and delivery of specified materials in connection with residential custom home

design and/or construction and as pertaining to the Plaintiffs' Land and improvements planned and built thereon;

3.       materially misrepresenting their ownership and maintenance of insurance coverage specified in the Construction Contract which insurance coverage, upon information and belief, has not been confirmed despite demand, and never was procured;

4.       materially misrepresenting the quality, price and type of construction materials used in the Plaintiffs' home, and substituting inferior and non-specified materials without Plaintiffs' consent or knowledge;

5.       materially misrepresenting that the Plaintiffs' selected Home would "fit" on the Land as designed and that the home would meet all land use, building and safety code requirements of Horsham Township, Pennsylvania; and failing to obtain a zoning variance with full knowledge of the need for same, but instead surreptitiously altering the design of the Plaintiffs' Home without Plaintiffs' consent or knowledge;

6.       materially misrepresenting that the Plaintiffs' son, as an inducement for purchasing the lot next to the Defendants, would have unfettered and direct key-assisted access to Defendants' recreational facilities;

7.       materially misrepresenting that the Defendants recorded Resolution No. 96-68 with regard to the proper creation of a homeowners' association and yet, collecting monthly association fees for an entity that does not exist.

B.    using the United States mails on two or more occasions to execute or attempt to execute their schemes to defraud, including mailing contract and other documents, issuing HOA assessments, submitting purchase orders and price quotations, to Plaintiffs and third parties;

C.    using the interstate telephone network to execute or attempt to execute their schemes to defraud, including, but not limited to, ordering design plans, contacting sub-contractors and ordering inferior construction materials;

D.    failing to fulfill and perform the material terms and conditions of the Agreement and the Construction Contract;

E.    exercising dominion and control of the Plaintiffs' personal property, and therefore, depriving the Plaintiffs of their property without their consent or lawful justification;

F.    enjoying the proceeds and profits derived from their fraud, deceit, and breaches of the Agreement and Construction Contract;

G.    violating the provisions of the Unfair Trade Practices and Consumer Protection Law; and

H.    acting in reckless and wanton disregard of their contractual commitments by improperly performing their obligations and failing to supervise and coordinate the construction of Plaintiffs' home.

Defendants violated the Racketeering Influenced and Corrupt Organizations Act (RICO) §§ 1962 (b) and (c) by acts of misconduct described in paragraphs A, B, and C above, and various common law and statutory provisions as well.  See generally Compl. ¶¶ 1-63.

5

## III.    LEGAL AUTHORITY

Defendants seek dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1367(c)(3), hoping thereby to evade applicable RICO statutory provisions in their defensive effort to re-characterize this multi-claim federal action as a mere breach of contract case.  In the process, Defendants attack the structure of Plaintiffs' Complaint but ignore the extensive and detailed factual allegations in Plaintiffs' Complaint and the liberal pleading requirements of the Federal Rules of Civil Procedure.

### A.    <u>Standard of Review – Federal Pleading Requirements</u>.

At this early stage of the litigation, Plaintiffs are not required to prove their case. As this Court recently explained,

> The Defendant[s] [are] reminded that the Federal Rules of Civil Procedure do not require detailed pleading of the facts on which a claim is based.  Instead, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . . *The standard of notice pleading under the Federal Rules is extremely lenient.*

<u>Victory Outreach Center, et al. v. Melso, et al.</u>, No. Civ. A. 00-5185, slip op. at 2 (E.D. Pa. July 1, 2002) (Hutton, J.) (quoting Fed.R.Civ.P. 8(a)(2) (emphasis added)).  For purposes of Rule 12(b)(6), the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them."  <u>Id.</u> (quoting <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990) (internal citations omitted)).  Accordingly, this Court must consider "whether relief could be granted . . . 'under any set of facts that could be proven consistent with

6

the allegations.'" <u>Gasoline Sales, Inc. v. Aero Oil Co.</u>, 39 F.3d 70, 71 (3d Cir. 1994) (quoting

<u>National Org. for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 799, 127 L.Ed. 2d 99

(1994)).  Thus, the question is not whether the Plaintiffs will ultimately prevail, but whether they

could prove any set of facts in support of their claims that would entitle them to relief.  The

allegations in Plaintiffs' Complaint, if proven at trial, would entitle them to relief.

   The detailed factual allegations of Plaintiffs' Complaint more than satisfy the

lenient federal pleading requirements as well as the heightened requirements for fraud allegations

under Rule 9(b); and ultimately, the Complaint provides the Defendants with specific and

expansive factual notice of Plaintiffs' claims and theories.  Defendants' Motion to Dismiss must be

denied as a result.

  **B.**  <u>**Defendants' Specific Arguments**</u>

   Defendants' arguments raised in support of dismissal of Plaintiffs' Complaint are

misguided insofar as each argument either ignores the specific factual allegations supporting the

elements of each cause of action or misstates the current applicable law.

   1.  **Count IV - The RICO Claim**

   Defendants are liable under the RICO Act because they engaged in a pattern of

racketeering activity when they committed predicate acts of mail and wire fraud in furtherance of

their scheme to induce, manipulate and ultimately, defraud the Plaintiffs.  <u>See</u> 18 U.S.C. § 1962;

<u>see also</u> <u>Tabas v. Tabas</u>, 47 F.3d 1280, 1289 (3d Cir. 1995) ("The RICO statute provides for civil

damages for 'any person injured in his business or property by reason of a violation of [18 U.S.C.

§ 1962].'") (quoting 18 U.S.C. § 1964(c)).

   Plaintiffs allege that the Defendants' conduct violates two sections of the RICO

7

statute: 18 U.S.C. §§ 1962(b) and 1962(c).  To establish a cause of action under these sections, a

plaintiff must allege facts, which if proven at trial, will establish the necessary elements.

(A)      Pattern of Racketeering Activity – Continuity Requirement

Defendants contend that the facts alleged do not constitute a pattern of

racketeering activity.  Defs. Mot. ¶ 3.A, p.2.  Defendants' argument in support of this contention

in their Memorandum of Law is not entirely clear – but concludes summarily that "based upon

Kehr Packages, the allegations of a pattern of racketeering activity made by the Cheatles is

insufficient."  Defs. Mem. at 9.  Plaintiffs allege that Defendants' conduct continued over a period

of more than two years.  See Compl. ¶¶ 12-17, 33-47.  Plaintiffs' Complaint specifically and

exhaustively identifies the conduct alleged to constitute racketeering activity during this period.

See Compl. ¶¶ 12-17, 33-47.

To remedy their injury under the RICO statute, Plaintiffs must demonstrate a

"pattern of racketeering activity."  See 18 U.S.C. § 1962.   In H.J., Inc. v. Northwestern Bell

Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court

analyzed the requirements for a "pattern" of racketeering activity to exist.  The Court held that

"to prove a pattern of racketeering activity, a plaintiff must show that the racketeering predicates

are related, and that they amount to or pose a threat of continued criminal activity."  Id. at 239

(emphasis in original).

The first requirement of "relatedness" is met if the predicate acts "have the same or

similar purposes, results, participants, victims, or methods of commission, or otherwise are

interrelated by distinguishing characteristics and are not isolated events."  Id. at 240.  The

predicate acts alleged in the instant case, two or more acts mail and wire fraud, are neither

8

sporadic nor isolated events. They are related as they all involve Defendants victimizing the Plaintiffs through the RICO schemes alleged in the Complaint and summarized in Section II.A through C, above.

The Court described the second requirement of "continuity" as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with threat of repetition." Id. at 241.

In this case, the Defendants' RICO schemes, as pleaded in the Complaint, meet the requirement of continuity under either concept. Defendants' material misrepresentations, substitution of inferior goods and improper assessments of homeowner fees have been occurring over a substantial period of time, at least since 2000, and continue through August, 2002. See Compl. ¶¶ 12-17; see also United States v. Pellulo, 964 F.2d 193, 209 (3d Cir. 1992) (holding that a nineteen month period of racketeering activity could satisfy continuity requirements). Therefore, the Complaint satisfies the strict durational requirement of RICO's close-ended "continuity" prong.

Similarly, the Complaint withstands the open-ended continuity analysis as well. As the Supreme Court explained in H.J., Inc., this continuity is satisfied "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" H.J., Inc., 492 U.S. at 243. The Complaint alleges with particularity that Defendants continuously made material misrepresentations with regard to the sale, construction and delivery of Plaintiffs' new home. Defendants lied about their experience as builders; Defendants misrepresented lot size, benefits that came with purchasing their land (basketball court access), and insurance coverage;

9

Defendants substituted inferior goods but charged premium prices; Defendants issued and collected homeowners' assessments for an entity which does not exist. Defendants repeatedly fraudulently misrepresented critical home-construction "cornerstones" and caused substantial injury to Plaintiffs. See, e.g., Compl ¶¶ 12-17.

These practices, including resulting building and safety code violations and the collection of HOA fees, continue, and Defendants' scheme might have continued indefinitely absent discovery by Plaintiffs, as memorialized and confirmed in Exhibits 6 (Letter of Township Inspector) and 7 (Letter of Township Code consultant) to the Complaint. See Seneca Ins. Co. v. Commercial Transp., Inc., 906 F.Supp. 239, 244 (M.D. Pa.) (finding open-ended continuity where "[t]here is ample evidence . . . to infer that, without detection, Defendants' alleged scheme might have continued indefinitely."); see also Albert Einstein Medical Center v. Physicians Clinical Svcs., Ltd, No. 99-3387, 1991 WL 193391, at *4 (E.D. Pa. Sept. 19, 1991) (Hutton, J.) (finding nineteen month period that ceased only upon discovery to satisfy continuity requirement). Although Defendants attempt to trivialize Plaintiffs' claims into simple allegations of "breaches of promises," Defendants' actions over the last two and a half years are properly identified for what they were intended to be: fraudulent schemes designed to reap the largest profit from their unsuspecting, and trusting, victims. See Compl. ¶¶ 12, 15 and 18; Exhibits 4, 6 and 7; see also Tabas, 47 F.3d at 1293 ("[t]he ambit of RICO may encompass a 'legitimate' businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts").

      (B)    Mail and Wire Fraud

Defendants argue that the RICO claim should be dismissed because "the alleged

10

predicate acts do not constitute mail or wire fraud." Defs. Mot. ¶ 3.B, p.2. This argument ignores the factual allegations and misstates the law. Defendants orchestrated their fraudulent schemes by mailing Contract documents, purchase orders, price quotations, and other documents to Plaintiffs and third parties. Defendants also used the telephone network to execute their schemes to defraud. These acts were neither isolated nor sporadic. Exhibit 4 of the Complaint specifies *over 100 instances* of Defendants' purposeful acts and omissions. Therefore, the predicate acts of mail fraud and wire fraud pleaded in the Complaint satisfy the pleading requirements of the RICO Act. See Tabas, 47 F.3d 1294 ("the use of the mails need not be an essential element of the fraudulent scheme."); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991) ("[C]ompletely 'innocent' mailings can satisfy the mailing element."); Schmuck v. United States, 489 U.S. 705, 710-11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) ("It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'") (citations omitted).

Thus, Plaintiffs' Complaint adequately pleads and specifies the predicate acts necessary to sustain a cause of action under the RICO statute.

(C)    Nexus of Control of Enterprise and Racketeering Activity

Section 1962(b) makes it unlawful for a person to "acquire or maintain," through a pattern of racketeering activity, any "interest or control" over an enterprise affecting interstate commerce. 18 U.S.C. § 1962(b). To satisfy the requirements of § 1962(b), a Plaintiff must show a "specific nexus between control of a named enterprise and the alleged racketeering activity,"and a resulting injury. Kehr Packages, 926 F.2d at 1411.

Although in their Motion, Defendants cite § 1962(b), they do not challenge the

11

sufficiency of Plaintiffs' pleading with respect to this provision.  Nevertheless, the Plaintiffs submit

that their Complaint satisfies the pleading requirements of § 1962(b).  See Compl. ¶¶ 33-47.

David and Dawn Katz have acquired their interests in and economic gain from the Paradise

Enterprise by engaging in the activity described in the Complaint and in Sections II.A - C of this

Memorandum.  Because of their sole ownership and control of the entities which comprise the

Paradise Enterprise, there was no oversight of their fraudulent representations and no discovery of

their fraudulent schemes until after Plaintiffs suffered substantial injury.  Their interest and control

caused direct injury to Plaintiffs, as explained more fully in their Complaint.  See, e.g., Compl. ¶¶

12-18, 33-54.  Accordingly, Plaintiffs' Complaint satisfies the pleading requirements of § 1962(b).

(D)    The Enterprise Requirement

Likewise, the Complaint on its face satisfies the pleading requirements of §

1962(c).  Defendants argue that the Complaint does not allege "an enterprise separate and apart

from the defendants" citing to cases which have been overruled.  See Defs. Mot. § 3.C., and

Mem. at p. 11.  Defendants' argument is contradicted by firmly established controlling precedent

from the United States Court of Appeals for the Third Circuit and by specific and detailed

allegations in the Complaint.

Under federal RICO, an "enterprise" "includes any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity."  18 U.S.C. § 1961(4).  At this early stage of pleading, a plaintiff

need only identify the entities it believes constitute the RICO enterprises.  See Seville Indus.

Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir. 1984) ("The rules of pleading

require nothing more at this early juncture than that bare allegation.").  Plaintiff has sufficiently

12

identified David and Dawn Katz and the Paradise entities named in the Complaint as the "Paradise Enterprise." See Compl. ¶¶ 3, 35.

   The Third Circuit Court of Appeals, interpreting the statutory requirement of § 1962(c) that a defendant "person" must be "employed by or associated with" an enterprise, concluded: "[T]he language contemplates that the 'person' must be associated with a separate 'enterprise' before there can be RICO liability on the part of the 'person.'" B.F. Hirsch v. Enright Refining Co., Inc., 751 F.2d 628, 633 (3d Cir. 1984). As a result, "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient. Instead a viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'" Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 268 (3d Cir. 1995).

   Plaintiffs' Complaint identifies an entirely separate and distinct enterprise, an association of all defendants termed the "Paradise Enterprise," and alleges that both individual defendants (David and Dawn Katz), together with the named corporations engaged in racketeering activity as "persons" in the Paradise Enterprise. None of the defendants is alleged to be both a RICO person and the RICO enterprise; they are all alleged to be both a RICO person and a *component* of the RICO enterprise. See Jaguar, 46 F.3d at 267 ("[A] corporation would be liable under § 1962(c) only if it engages in racketeering activity as a 'person' in another distinct 'enterprise,' since only 'persons' are liable for violating § 1962(c)."); see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., No. 95-1698, 1995 WL 455969 (E.D. Pa. July 27, 1995) (Newcomer, J.) (permitting § 1962(c) claims against defendant corporations and individuals, where the collective association of defendants was alleged as the enterprise); PTI Services, Inc. v. Quotron Systems, Inc., No. 94-2068, 1995 WL 241411 at *12 (E.D. Pa. April 19, 1995) (Dubois,

13

J.) (concluding that a corporation could serve dual roles as both RICO defendant and member of a RICO enterprise).

Plaintiffs also appropriately alleged that the Defendants "participated in the operation and management" of the Paradise Enterprise. See Compl. ¶ 45. David and Dawn Katz, officers and/or directors of each named corporate defendant, created and used the corporate defendants to carry out the affairs of the Paradise Enterprise. As a result, each of the Defendants had a role in Paradise Enterprise, and, as alleged in the Complaint, the Defendants were part of the Enterprise itself. At this early pleading stage, the allegations of the Complaint meet the requirements of § 1962(c). See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., 62 F.3d 967 (7th Cir. 1995) (finding allegations of enterprise comprised of defendants sufficient under pleading requirements); Emcore Corp. v. PriceWaterhouseCoopers LLP, 102 F. Supp.2d 237, 263 (D. NJ. 2000) (finding allegations that the defendants were part of the enterprise adequate at the early pleading stage).

Accordingly, Plaintiffs' Complaint satisfies each of the pleading requirements for a federal RICO claims based upon § 1962(b) and § 1962(c). Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss the RICO claim and retain jurisdiction over the state law claims as well. Because Defendants also challenge the sufficiency of Plaintiffs' state law causes of action, those arguments will be addressed below.

> **2.      Counts I, II – Breach of Contract Claims against All Defendants.**
> **(I - Money Damages; II - Rescission)**

Defendants seek a dismissal of Plaintiffs' breach of contract claims against the individual Defendants because Plaintiffs have not sufficiently pleaded specific facts to pierce the

corporate veil.  Plaintiffs respectfully disagree and submit that the Complaint, as filed, carefully

complies with the lenient federal pleading requirements for breach of contract actions.

As alleged in the Complaint, David Katz represented himself directly to the

Plaintiffs as the signator party to Construction Contract and the Agreement to Sell Real Estate.

See Compl. ¶¶ 2,3,4,5, 9, 10.  David Katz signed his name individually under "Paradise

Contractors, Inc.," and not as an officer or director of the corporation.  Id. ¶ 11.  PCI is also

alleged to be the "alter ego of David and Dawn Katz" by ownership, formed two days prior to the

execution of the Construction Contract.  Compl. ¶¶ 3, 20.  David and Dawn Katz, as sole

shareholders, officers and directors, controlled and managed PCI and the other three corporate

defendants.  Id. ¶¶ 3, 6.  Katz also maintained their home residence as a registered business

address for the corporate defendants.  Id. ¶¶ 2, 3.  Finally, Katz used PCI and the other corporate

entities to perpetrate fraud and injustice upon Plaintiffs.  See id. ¶¶ 12, 14, 15, 16, 17, 33 - 47, 49-

51, 53, 56; see also Thompson v. Glenmede Trust Co., 1993 WL 197031 (E.D. Pa. June 8, 1993)

(Hutton, J.) (finding allegations of fraud sufficient to overcome motion to dismiss).  Accordingly,

Plaintiffs' Complaint alleges sufficient facts to hold the individual defendants liable under the

Contract.

Defendants also challenge Plaintiffs' ability to hold David Katz individually liable

under the Agreement.  In crafting their argument on this issue, Defendants conveniently ignore,

and therefore do a disservice to this Court, Paragraph P6 of the Construction Contract signed on

August 6, 2000 (Exhibit 2 to Plaintiffs' Complaint) which expressly provides that the *"terms,*

*conditions, rights and obligations in this Agreement, and all other attachments thereto, shall*

*survive . . . and this Agreement shall not be deemed to be merged into any other documents*

*unless explicitly stated and mutually agreed to by the parties."* See Compl. ¶ 11B(19) (emphasis

added). David Katz thereafter signed the Agreement to Sell Real Estate, individually, on October

30, 2000. See Compl., Ex.1. Therefore, this explicit "no merger clause" to which the individual

defendants agreed and executed, negates Defendants' argument that "promises contained in a

contract for the sale of real estate are merged in and do not survive the conveyance of property by

deed." Defs. Mem. at 13; see Valvano v. Galardi, 526 A.2d 1216, 1220 (Pa. Super. 1987) ("The

merger rule does not apply where the expressed intention of the parties is to the contrary.")

(citing Carsek Corp. v. Stephen Schifter, Inc., 246 A.2d 365 (1968)); Pekny v. Hrabosky, 161 A.

749, 751 (Pa. Super. 1932) (finding that the doctrine of merger "is a rebuttable presumption . . .

and merger is a matter of the intention of the parties."). Therefore, Plaintiffs have a solid

foundation on which to allege the liability of the individual defendants under the Agreement and

the Contract.

   Defendants also argue that, except for the RICO violations, there are no

allegations of wrongdoing by three of the corporate defendants, Paradise Homeowners'

Association, Paradise Management Group, Inc. and Paradise Development Group, Inc. As the

Complaint alleges, in addition to their role as components of the RICO enterprise, each of the

defendants are jointly and severally liable for the fraudulent misrepresentations made by David

and/or Dawn Katz as owners, managers, and directors of each corporate entity and in furtherance

of the business of each. See generally Compl. ¶¶ 1 - 63; see also Lokay v. Lehigh Valley Coop.

Farmers, Inc., 492 A.2d 405, 408-09 (Pa. Super. 1985) (holding that a corporation--a fictional

person which can only act through its officers, directors and agents--is liable for fraud of those

agents acting within the scope of their authority).

16

3.    **Counts V, VI – Defendants' Conversion and Unjust Enrichment**

Consistent with their "kitchen sink" strategy, Defendants next challenge the sufficiency of Plaintiffs' allegations giving rise to causes of action for conversion and unjust enrichment. Defendants' arguments in this regard are also without merit.

(A)    Count V – Conversion

In order to state a claim for conversion under Pennsylvania law, a plaintiff must allege that the defendants are responsible for "the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir.1995). "It must also be noted that money may be the subject of conversion." Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp., 797 A.2d 269, 280 (Pa. Super. 2002) (citing Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1987)). Contrary to Defendants' unsupported assertion, the allegations of Plaintiffs' Complaint meet this standard. See Compl. ¶¶ 48 - 51. Unlike the only case cited by Defendants, Montgomery v. Federal Insurance Co., Plaintiffs' conversion claim amounts to more than a claim for breach of contract. In the instant case, as pleaded in the Complaint, the Defendants' actions and omissions, which include substitution of inferior goods and collection of dues and assessments for a phantom entity, deprived the Plaintiffs of their property without their lawful consent or legal justification. See Compl. ¶¶ 12-17.

Similarly, Defendants' arguments to dismiss Plaintiffs' claim for a constructive trust fail. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment. See DeMarchis v. D'Amico, 637 A.2d 1029,

17

1036 (Pa. Super. 1994); <u>Roberson v. Davis</u>, 580 A.2d 39 (Pa. Super. 1990); <u>see also</u> <u>Santoro v.</u> <u>Morse</u>, 781 A.2d 1220, 1231 (Pa. Super.2001).

(B)    <u>Count VI – Unjust Enrichment</u>

In order to sustain a claim for unjust enrichment, the plaintiff must show "(1) a benefit conferred upon one party by another, (2) appreciation of such benefit by the recipient and (3) retention of the benefit under circumstances that would be unjust." <u>Styer v. Hugo</u>, 619 A.2d 276 (Pa. Super. 1993), <u>cert. denied</u>, 535 Pa. 610, 637 A.2d 276 (1994), cited in, <u>Hewlett-Packard</u> <u>Co. v. Arch Assoc. Corp.</u>, 908 F. Supp. 265, 275 (E.D. Pa.1995).  Plaintiffs' Complaint alleges specific facts which satisfy the pleading requirements for unjust enrichment under the federal pleading standard.

A constructive trust can be imposed when unjust enrichment has been found and the retention of the benefit would be unfair under the circumstances.  <u>Wolf v. Wolf</u>, 514 A.2d 901 (Pa. Super. 1986), <u>overruled on other grounds</u>, <u>Van Buskirk v. Van Buskirk</u>, 590 A.2d 4 (Pa. 1991).  The necessity for such a trust may arise from circumstances evidencing specific conduct, including fraud.  <u>Id.</u>  As Plaintiffs' Complaint specifically alleges that the Defendants are presently enjoying the proceeds and profits derived from their fraud, deceit and breaches of their Agreement and Contract, and were unjustly enriched thereby, Plaintiffs' request for a constructive trust comprised of those proceeds and profits is justified.

Therefore, Plaintiffs' claims for conversion and unjust enrichment satisfy federal pleading requirements and should survive Defendants' Motion to Dismiss.

4.     **Count VII – Defendants' Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and Fraud**

Defendants also seek to dismiss Plaintiffs' claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Contrary to Defendants' misguided argument, Plaintiffs' Complaint sufficiently states a claim under the UTPCPL statute. See Pennsylvania Chiropractic Assoc. v. Independence Blue Cross, 2001 WL 1807781 (Pa. Com. Pl.) (July 16, 2001) (Herron, J.) (finding allegations of misfeasance sufficient under UTPCPL); Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300. 307 (3d Cir. 1995) ("[I]n Pennsylvania, . . . malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices and Consumer Protection Law").[1]

The UTPCPL is to be "liberally construed" to protect the public from fraud and unfair or deceptive business practices. See Keller v. Volkswagen of America, Inc., 733 A.2d 642, 626 (Pa. Super. 1999). For a claim to arise under UTPCPL, a plaintiff must allege the elements of common law fraud. See generally Hammer v. Nikol, 659 A.2d 617, 619-20 (Pa. Cmwlth. 1995). Plaintiffs' Complaint meets the heightened pleading requirements of Federal Rule of Civil Procedure 9(b): "in all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiffs' Complaint, in a section titled, "Katz and PCI's Fraud in the Inducement and Misrepresentations", provides the Defendants detailed allegations of fraud and deceit. See Compl. ¶¶ 14 - 17. The Defendants induced the Plaintiffs to enter into the Agreements through their fraudulent misrepresentations, knew that their

---

[1] Although Defendants argue that Phico Insurance Co. v. Presbyterian Medical Svcs. Corp., 663 A.2d 752 (Pa. Super. 1995) rejected the line of cases relied upon by the Third Circuit, Phico discussed negligence, not causes of action under UTPCPL.

representations specifically regarding, *inter alia*, their experience, quality and type of materials, code compliance, defects, price quotations, insurance documents, existence of homeowners' association, were false.  As pleaded in the Complaint, the Plaintiffs justifiably relied on the Defendants' material representations, and were ultimately damaged by that reliance.  <u>See</u> Compl. ¶¶ 14 -17, 55-56.

As a result, Plaintiffs' Complaint properly states a claim under UTPCPL based on the Defendants' fraud, deceptive business practices and improper performance of their contractual obligations.

### 5.    Count IX – Negligence

Likewise, Plaintiffs' Complaint appropriately includes a claim for negligence under the facts alleged.  The nonfeasance/misfeasance distinction of <u>Phico Insurance Co. v. Presbyterian Medical Svcs. Corp.</u>, 663 A.2d 753 (Pa. Super. 1995) has not yet been addressed by the Pennsylvania Supreme Court.  <u>See</u> <u>Pennsylvania Chiropractic Ass.</u>, 2001 WL 1807781 at *13-14. Therefore, Plaintiffs' cause of action for negligence based on Defendants' misfeasance is properly asserted at this stage of litigation.

Accordingly, Plaintiffs' Complaint satisfies the federal pleading requirements for a claim under both the Unfair Trade Practices and Consumer Protection Law, and common law negligence.

6.    **Count VIII – Defendants' Violation of the Uniform Planned Community Act**

Finally, Defendants challenge Count VIII, the claim under the Uniform Planned Community Act. In Count VIII, Plaintiffs seek judgment *derivatively* on behalf of the Defendant Paradise Pines Homeowners' Association against Defendants under the Uniform Planned Community Act (UPCA). Defendants fail to challenge or even address the Plaintiffs' derivative action allegations. Rather, Defendants assert that the UPCA has no applicability in this case.

The Act itself limits applicability to a planned community of less than twelve units, "unless the declaration provides that the entire subpart is applicable." 68 Pa.C.S. § 5102(a)(1). At this early stage of litigation, formal discovery has not commenced. As a result, Plaintiffs have no confirmation, after conducting record searches in the records of the Montgomery County Recorder of Deeds, and Defendants have not refuted, that a Declaration has not been recorded. See Compl. ¶¶ 12.G, 15.H, 57-61. Accordingly, Plaintiffs' derivative action claim filed on behalf of Paradise Pines Homeowners' Association also satisfies the lenient federal pleading requirements.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety, and enter the Plaintiffs' proposed Order accompanying Plaintiffs' Answer and Memorandum of Law in opposition to Defendants' Motion.

21

With regard to Count III of the Complaint (Lis Pendens), on August 22, 2002, Defendants filed a separate motion to strike; Plaintiffs will timely respond with their Memorandum In Opposition thereto.

Respectfully submitted,

_____

John C. Fenningham
Maura F. Ratigan
Corr, Stevens & Fenningham
Five Neshaminy Interplex, Suite 315
Trevose, PA  19053

Attorneys for Plaintiffs

Dated:  August 30, 2002

22

## <u>CERTIFICATE OF SERVICE</u>

I, John C. Fenningham, Esquire, hereby certify that a true and correct copy of the foregoing Plaintiffs Motion and Memorandum of Law in Opposition to Defendants' Motion to Dismiss was served on the following individual *via* first class U.S. Mail, postage prepaid, on August 30, 2002:

Francis Recchuiti, Esquire
VANGROSSI & RECCHUITI
319 Swede Street
Norristown, PA  19401-4801

Attorney for Defendants

_____
John C. Fenningham