**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ROBERT S. CHEATLE, <u>et</u> <u>al.</u>　　　　:　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
DAVID A. KATZ, <u>et</u> <u>al.</u>　　　　　　:　　　　NO. 02-4405


## <u>MEMORANDUM AND ORDER</u>


HUTTON, J.　　　　　　　　　　　　　　　　April 1, 2003


In this case, the Plaintiffs, Robert and Nancy Cheatle, are suing the Defendants, David and Dawn Katz and several corporate entities controlled by Mr. and Mrs. Katz, because of a failed real estate transaction. Two motions are presently before the Court. First, Defendants move to dismiss Plaintiffs' complaint (Docket No. 4) pursuant to Federal Rule of Civil Procedure 12(b)(6). Second, Defendants move to strike (Docket No. 5) a <u>lis</u> <u>pendens</u> indexed against their real property. For the reasons discussed below, Defendants' Motion to Dismiss is granted as to Plaintiff's claim under 18 U.S.C. § 1962(b). This motion is denied as to the remainder of Plaintiffs' claims. Defendants' Motion to Strike Lis Pendens is denied.


## I.　<u>BACKGROUND</u>

This is a lawsuit between two couples who are next-door neighbors, Robert and Nancy Cheatle and David and Dawn Katz. On October 30, 2000, the Cheatles entered into a contract to purchase

approximately .81 acres of land from David Katz for $300,000. The property they purchased is located in Ambler, Pennsylvania. It is part of a four-lot subdivision, owned by Mr. Katz, known as Paradise Pines. The Cheatles purchased the lot adjacent to the Katz family home. They intended to build a home on this land.

Prior to purchasing this land, the Cheatles entered into a contract with Paradise Contractors, Inc. ("PCI"), an entity also owned by Mr. Katz, for the construction of a home in Paradise Pines. According to the contract, PCI was to be paid $650,000 for the construction of the Cheatles' home. The contract also imposed a series of specific obligations on PCI. According to the Cheatles, they entered into this contract because David Katz held himself out to be an experienced and skillful general contractor and construction manager.

During construction of the home, the Cheatles began to be unsatisfied with David Katz's work. In this suit, the Cheatles allege numerous incidents of fraud and breach of contract by David and Dawn Katz and the corporate Defendants. For example, Mr. Katz failed to properly manage the construction of the home and the delivery of materials. He failed to obtain the proper permits for the home. He substituted inferior materials for those specified in the agreement. He set up a sham homeowner's association and collected fees for it, among other allegations discussed below.

-2-

## II.  **LEGAL STANDARD**

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court must accept as true all facts alleged in the complaint and any reasonable inferences that can be drawn therefrom. <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990) (citing <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988)); <u>see also</u> <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 249-50 (1989).  A court may only dismiss a complaint where plaintiff can prove no set of facts, consistent with his allegations, which justifies relief.[1]  <u>See</u> <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994); <u>Crighton v. Schuylkill County</u>, 882 F. Supp. 411, 414 (E.D. Pa. 1995).

The court is not required to credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. <u>See</u> <u>Id.</u>  The Federal Rules merely require "a short and plain statement of the claim showing that the pleader is entitled to relief," enough to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2) (West 2001).  In addition, when evaluating a complaint that includes allegations of fraud, as in the instant

---

[1]

    Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

case, the court must apply Fed. R. Civ. P. 9(b), which contains a heightened pleading standard.[2]

### III.  DISCUSSION – MOTION TO DISMISS

In their motion, Defendants ask the Court to dismiss the following Counts in Plaintiffs' complaint: Counts I and II (Breach of Contract), Count IV (RICO), Count V (Conversion), Count VI (Unjust Enrichment), Count VII (Pennsylvania Uniform Trade Practices and Commercial Protection Law), and Count VIII (Uniform Planned Community Act).  Each count is discussed below.

**A. Count IV – Racketeer Influenced and Corrupt Organizations Act ("RICO")**

**1. Pattern of Racketeering Activity**

The RICO statute provides a civil action for "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Section 1962 contains four separate subsections that outline different RICO causes of action, two of which are implicated in this case.  First, Section 1962(c) prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  Second, Section 1962(b) prohibits any person from acquiring, maintaining an

---

[2]    Federal Rule of Civil Procedure 9(b) provides, in part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

interest in, or controlling any enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(b). Accordingly, both provisions require the injured party to demonstrate that the defendant engaged in a "pattern of racketeering activity." Tabas v. Tabas, 47 F.3d 1280, 1289 (3d Cir. 1995).

Under the statute, a "pattern of racketeering activity" requires the commission of at least two predicate offenses within a ten year period. 18 U.S.C. § 1961(5). Section 1961(1) enumerates the RICO predicate offenses, which include mail fraud and wire fraud. 18 U.S.C. § 1961(1). Commission of two such acts within a ten-years period, standing alone, is not enough to establish a pattern. In H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195 (1989), the Court held that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." 492 U.S. at 239.

The first requirement, relatedness, is easily defined. Id. at 239. Predicate acts meet the relatedness requirement if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics or are not isolated events." Id. at 240.

The second requirement, continuity, is defined by the facts of the individual case. <u>Id.</u> at 241-42. Under <u>H.J., Inc.,</u> there are two kinds of continuity. First, "closed-ended continuity" refers to "a closed period of repeated conduct." <u>Id.</u> A party may establish closed-ended continuity by "proving a series of related predicates extending over a *substantial* period of time." <u>Id.</u> at 242 (emphasis added). Second, "open-ended continuity" describes "past conduct that by its nature projects in the future with a threat of repetition." <u>Id.</u> at 241. One way to establish open-ended continuity is to show that the predicates are part of the regular way of conducting defendant's ongoing legitimate business operations. <u>Id.</u> at 243. Regardless of which method is chosen, continuity is centrally a temporal concept, <u>i.e.,</u> it concerns the period of time over which the predicate acts occurred or may occur. <u>Id.</u> at 242.

### a. *Plaintiff's 1962(c) Claim*

In Defendants' Motion to Dismiss, they argue that Plaintiffs failed to adequately plead the existence of a pattern of racketeering activity. First, Defendants argue that the alleged predicate acts do not constitute mail or wire fraud. Defs.' Mot. at 2.[3] Second, Defendants argue that Plaintiffs have failed to establish the continuity and relatedness of the predicate acts, as

---

[3]    Although Defendants raise this argument in their Motion, they only discuss the elements of mail fraud as those elements relate to the continuity analysis. Defs.' Mem. at 8-10. Nevertheless, this Court will briefly address this argument.

required by <u>H.J., Inc.</u>    <u>Id.</u>; Defs.' Mem. at 5-10.    Finally, Defendants argue that the Section 1962(c) claims must be dismissed because the corporate defendants are impermissibly alleged to be both a "person" and an "enterprise" under the statute.  Defs.' Mem. at 11.   As discussed below, the Court finds that Plaintiffs have pled facts sufficient to state a Section 1962(c) claim. Accordingly, Defendants' Motion is denied as to this claim.

### (1) <u>Predicate Acts</u>

Plaintiffs allege that the individual defendants committed mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.   These statutes share the same essential elements, except that the wire fraud statute applies only to interstate or foreign transmissions.  18 U.S.C. § 1341, 1343; <u>Carpenter v. United States</u>, 484 U.S. 19, 25 n.6, 108 S. Ct. 316, 98 L.Ed. 2d 275 (1987) (applying same analysis to both sets of elements); <u>United States v. Frey</u>, 42 F.3d 795, 797 n.2 (3d Cir. 1994) (finding mail fraud cases applicable to wire fraud statute); <u>Lubart v. Riley and Fanelli</u>, No. Civ.A. 97-6392, 1998 WL 398253, at *2 (E.D. Pa. June 22, 1998) (collecting cases).  Those essential elements are: (1) a scheme to defraud; and (2) use of the mails or wires for the purpose of executing the scheme.  <u>Kehr Packages</u>, 926 F.2d at 1413.  The actual violation is the use of the mails or wires.   <u>Id.</u>  Accordingly, true statements sent by mail or wire transmission are prohibited when made in furtherance of a scheme to

defraud.  <u>Schmuck v. United States</u>, 489 U.S. 705, 715, 109 S. Ct. 1443, 1450, 103 L. Ed. 2d 734 (1989).  Moreover, the mailing or wire transmission need not be sent to the victim of the scheme, so long as it is sent in furtherance of the scheme.  <u>Albert Einstein Med. Ctr. v. Physicians Clinical Serv., Ltd.</u>, No. Civ.A. 90-3387, 1991 WL 193391, at *4 (E.D. Pa. Sept. 19, 1991).

In this case, Plaintiffs have alleged mail and wire fraud with the particularity required under Fed. R. Civ. P. 9(b).  First, taking the Plaintiffs allegations as true, the Plaintiffs have established a scheme to defraud.  According to the complaint, Defendants intentionally mislead Plaintiffs as to their experience as builders and real estate developers.  Moreover, Plaintiffs also misled Defendants as to the existence of the Paradise Pines Homeowners Association.  When the construction contract called for safeguards to ensure compliance, such as obtaining Township permits, the Plaintiffs allege that Defendants falsely reported that they obtained such permits.  Accordingly, under the lenient standard applied at this stage of the proceedings, Plaintiffs have established facts supporting the existence of a scheme to defraud.

Second, Plaintiffs have also pled facts supporting their claims of mail and wire fraud.  Plaintiffs allege that Defendants used the mails to send contracts and other writings related to their scheme to Horsham Township and to the Cheatles.  Plaintiffs assert that these mailings were intended to defraud them by falsely

-8-

asserting that Defendants had received the necessary permits from the Township to construct the home. Pls.' Compl. at 34. Second, Plaintiffs assert that Defendants used the mails to send fraudulent documents to Plaintiffs' lender. Id. Accordingly, the Court finds that Plaintiffs have set forth a set of facts which could establish mail and wire fraud.

### (2) **Relatedness of the Predicate Acts**

The Court finds that the predicate acts are related. The Third Circuit has noted that "the relatedness test will nearly always be satisfied in cases of mail fraud stemming from the same fraudulent transaction – by definition the acts are related to the same 'scheme or artifice to defraud.'" Kehr Packages, 926 F.2d at 1414. In that case, the Plaintiffs alleged numerous acts of mail fraud relating to the same loan transaction, thereby satisfying the relatedness prong. Id. at 1417. Similarly, in this case, Plaintiffs allege at least two incidents of mail fraud relating to the construction contract and its implementation. Pls.' Compl. at 34. Accordingly, the Plaintiffs have pled sufficient facts to meet the relatedness prong.

### (3) **Continuity**

As noted above, predicate acts must be continuous in order to form a "pattern of racketeering activity." H.J., Inc., 492 U.S. at 242. To meet this requirement, a Plaintiff must show either closed-ended or open-ended continuity. Id. In this case,

Defendants' argue that Plaintiff has not met either continuity test. As this Court determines that Plaintiffs pleaded facts sufficient to establish closed-ended continuity, it is unnecessary to discuss open-ended continuity at this time.

As noted above, even innocent mailings related to a fraudulent scheme are considered mail fraud. In civil RICO cases based on the predicate acts of mail or wire fraud, however, the continuity test requires the court "to look beyond the mailings and examine the underlying scheme or artifice." Kehr Packages, 926 F.2d at 1414. As a result, continuity in mail fraud cases is based on the duration of the underlying scheme, rather than the length of time during which the mailings were actually sent. Tabas, 47 F.3d at 1294.

In Tabas, the Third Circuit discussed the requirements for proving a series of related predicate events over a substantial period of time. Id. at 1292. In reviewing five of its precedents on this issue, the Court found that "each time conduct . . . last[ed] no more than twelve months [it] did not meet the standard for closed-ended continuity." Id. at 1293. In Tabas itself, the Court found that a scheme lasting three and one half years met the "substantial period of time" test. Id. at 1294. The Tabas court also noted two cases, United States v. Pelullo, 964 F.2d 193, 209-10 (3d Cir. 1992) and Swistock v. Jones, 884 F.2d 755, 759 (3d Cir. 1989), indicating that periods of 19 months and 14 months,

-10-

respectively, may be sufficient to constitute closed-ended continuity.[4]  <u>Id.</u> at 1294.

Defendants argue that, although the alleged scheme lasted in excess of one year, this Court must consider the number of predicate acts and the number of victims in evaluating continuity. Defs.' Mem. at 8-10.  While Defendants are correct that "the number of [predicate acts] remains a factor," <u>Pelullo</u>, 964 F.2d at 210, at this stage in the proceedings, the Court finds that Plaintiffs' pleaded sufficient facts to establish closed-ended continuity.  In this case, Plaintiffs assert that Defendants engaged in a scheme to defraud, which lasted over two years, beginning in August 2000 and continuing through August 2002.  Pls.' Mem. at 9.  As this exceeds the length of the scheme in <u>Pelullo</u>, closed-ended continuity has been sufficiently established.

### (4) <u>Enterprise Requirement</u>

In this circuit, a plaintiff must allege a 1962(c) violation by a "person"[5] operating or managing a distinct and separate "enterprise."[6]  <u>Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.</u>, 46 F.3d 258, 262-64 (3d Cir. 1995) (tracing distinctiveness

---

[4]    This Court notes, however, that <u>Swistock</u> also contained evidence of a continuing series of predicate acts, indicating that the conduct was also open-ended.  <u>Pelullo</u>, 964 F.2d at 210.

[5]    For RICO purposes, "person" includes "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

[6]    "Enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity."  18 U.S.C. § 1961(4).

requirement in Third Circuit). Defendants argue that Plaintiffs' RICO claims are legally insufficient because the corporate defendants in the action are alleged to be both "persons" and an "enterprise" for purposes of the act. Defs.' Mem. at 11. Defendants correctly point out that if such a dual role is pled, then Plaintiffs' complaint cannot be allowed to proceed.

In response, Plaintiffs argue the enterprise requirement is met because they pleaded that each corporate defendant is part of a larger enterprise, an association in fact that the Plaintiffs have termed the "Paradise Enterprise." Pls.' Mem. at 13. In support of this argument, Plaintiffs point to Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., No. Civ.A. 95-1698, 1995 WL 455969 (E.D. Pa. July 27, 1995) and PTI Services, Inc. v. Quotron Sys., Inc., No. Civ.A. 94-2068, 1995 WL 241411, at *12 (E.D. Pa. April 19, 1995), for the proposition that a RICO enterprise may include a group of corporations and individuals acting as an association in fact. Pls.' Mem. at 13-14.

In Brokerage Concepts, the plaintiff asserted a Section 1962(c) claim against two corporations and several employees of those corporations. 1995 WL 455969 at *6. Defendants moved to dismiss the complaint, in part, on the grounds that a corporation cannot be both a RICO person and a RICO enterprise. Id. The Court, agreeing with this statement of the law, found that none of the corporate defendants were alleged to be both persons and

enterprises, because the plaintiff alleged that the corporations were part of a broader enterprise that included the individual defendants. Id. Similarly, in this case, Plaintiffs pleaded that the corporate defendants and the individual defendants are part of a larger association in fact. Accordingly, Plaintiffs have adequately established the existence of a separate enterprise.

### b. *Plaintiffs' 1962(b) Claim*

In Count IV of the their complaint, Plaintiffs also assert that Defendants violation Section 1962(b). This section provides, in pertinent part, that "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest or control in of an interest in a RICO enterprise." 18 U.S.C. § 1962(b). Thus, under this section of the Act, a plaintiff must allege an injury from the defendant's acquisition or control of the enterprise, *in addition to* an injury from the predicate acts. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993); Dianese, Inc. v. Pennsylvania, No. Civ.A. 01-2520, 2002 WL 1340316, at *9 (E.D. Pa. June 29, 2002). In Lightning Lube, the court stated, as an example, that such an injury occurs when "the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of [the] enterprise." 4 F.3d at 1190. A Section 1962(b) claim is insufficient if it merely restates the same injury that a 1962(c)

claim is meant to remedy. Id. at 1191. Moreover, the plaintiff in a Section 1962(c) action must show a "nexus between the interest [in the enterprise] and the alleged racketeering activities." Id. at 1190. It is insufficient to merely show that a person engaged in racketeering activity has an otherwise legitimate interest in the enterprise. Id.

Plaintiffs' complaint fails to make any allegations that, apart from the racketeering activities, they were injured as a result from defendant's acquisition or control of the Paradise Enterprise. Instead, Plaintiffs merely state that David and Dawn Katz "engaged in a pattern of racketeering activity to . . . foster directly or indirectly, their interests in and economic gain in the Paradise Enterprise . . . ." Pls.' Compl. at 35. Under Lightning Lube, Plaintiffs cannot maintain a Section 1962(b) action by merely restating their Section 1962(c) claim in this manner. Accordingly, Defendants' motion is granted as to Plaintiffs' 1962(b) claim.

**B. Counts I and II – Breach of Contract**

Defendants seek dismissal of Plaintiffs' breach of contract claims (Counts I and II) on the grounds that the individual defendants, as shareholders of the corporate defendants, cannot be held personally liable for the acts of the corporate defendants. In Pennsylvania, shareholders, officers and directors of a corporation are not liable for a corporation's breach of contract, absent establishment of either participation theory or the

equitable doctrine of piercing the corporate veil.  <u>First Reast</u>
<u>Vest, Inc. v. Avery Builders, Inc.</u>, 600 A.2d 601, 603 (Pa. Super.
1991).    Under  participation  theory,  liability  falls  on  the
individual,  rather  than  the  corporation,  when  the  record
establishes  the  individual's  participation  in  tortious  activity.
<u>Wicks v. Milzoco Builders, Inc.</u>, 470 A.2d 86, 90 (Pa. 1983).   In
contrast, a court pierces the corporate veil upon a finding that
the corporation is not a bona fide independent entity.   <u>Id.</u> at 89-
90. Under Pennsylvania law, courts are reluctant to pierce the
corporate veil, doing so "only when the entity is used to defeat
public convenience, justify wrong, protect fraud or defend crime."
<u>Sams v. Redevelopment Auth.</u>, 244 A.2d 779, 781 (Pa. 1968).

The Court finds that Plaintiffs have pleaded sufficient facts
to implicate the equitable doctrine of piercing the corporate veil.
In  the  complaint,  Plaintiffs  allege  that  the  various  corporate
Defendants  are  merely  alter  egos  for  David  and  Dawn  Katz.    To
support  this  allegation  Plaintiffs  point  to  David  Katz's
participation in the negotiations process and his role in building
the Plaintiffs' home.   Taking Plaintiffs' allegations as true, the
Court finds that they have set forth facts sufficient to make out
a claim for application of the doctrine of piercing the corporate
veil.

## C. <u>Count V – Conversion</u>

Under Pennsylvania law, "[c]onversion is the deprivation of

-15-

another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1984). Pennsylvania courts do not require the actor to have specific intent, rather, any intent to assert control over the chattel in a way that is detrimental to the owner's property rights is sufficient. Id. Money may be the subject of conversion. Id. A claim for conversion is not made out, however, when the plaintiff is merely restating a claim for breach of contract. Montgomery v. Fed. Ins. Co., 836 F. Supp. 292, 302 (E.D. Pa. 1993).

In Montgomery, the plaintiff brought two claims for conversion that were very similar to his breach of contract claims. Id. at 300. Specifically, the plaintiff claimed that the defendant insurance company converted his premium payments when it failed to pay on his claim. Id. In his conversion claim, the plaintiff sought punitive damages. Id. The court found that, because there was no evidence of fraud or bad faith in the case, the plaintiff could not make out a claim for punitive damages. Id. Accordingly, the conversion claim and breach of contract claim were identical. Id. As a result the court granted summary judgment against the plaintiff on its conversion claim. Id. at 302. In contrast, as discussed in Part III.E. *supra*, the Cheatles pleaded sufficient facts to support a claim for fraud. Accordingly, Plaintiffs' conversion claim survives Defendants' motion to dismiss.

**D. Count VI – Unjust Enrichment/Constructive Trust**

In Count VI of the complaint, Plaintiffs assert a claim of unjust enrichment against Defendants and ask this Court to impose a constructive trust on the money paid by the Cheatles to Defendants. Pls.' Compl. at 37. Defendants seek dismissal of this Count on the grounds that Plaintiffs' are seeking the payment of debt, which cannot be the subject of a constructive trust under Pennsylvania law. Defs.' Mem. at 14.

To make out a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon one party by another; (2) appreciation of such benefit by the recipient; and (3) retention of that benefit under circumstances that would be unjust." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993). Taking Plaintiffs' allegations as true, they claim that they paid large sums of money to Defendants as a result of a fraudulent scheme. Defendants kept these payments. Accordingly, this court finds that Plaintiffs have pled facts sufficient to state an unjust enrichment claim.

A constructive trust is a remedy created by equity to prevent unjust enrichment. Huber v. Wagner, 425 A.2d 456, 458 (Pa. Super. 1981). The need for such a remedy usually arises out circumstances involving fraud, accident, mistake, duress, or undue influence. Id. (citing Yohe v. Yohe, 353 A.2d 417 (Pa. 1976). Despite Defendants' assertion to the contrary, Plaintiffs have pled substantial allegations of fraud in their complaint. Accordingly,

-17-

this Count cannot be dismissed on the grounds that the remedy sought is improper. Defendants' motion is denied as to this count.

**E. Count VII – Pennsylvania Unfair Trade Practices and Commercial Protection Law**

In Count VII of the complaint, Plaintiffs assert a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1-201-9.2 (West 1993 & Supp. 2000) ("UTPCPL"). Section 3 of the Act prohibits twenty-one types of "unfair or deceptive practices," including "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Pa. Stat. Ann. tit. 73 § 201-3(xxi). Section 9.2 of the Act provides a private action for "any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property as a result of a the use of employment of any practice declared unlawful by [Section 3 of the Act]." Pa. Stat. Ann. tit. 73 § 201-9.2.

Defendants seek dismissal of this Count on the grounds that Plaintiffs did not adequately plead facts demonstrating fraud by the Defendants. Defs.' Mem. at 15. As Defendants correctly point out, to state a cause of action under the UTPCPL's "catch-all" provision, Plaintiffs must plead all the elements of fraud. Skurnowicz v. Lucci, 798 A.2d 788, 794 (Pa. Super. 2002) (citing Sewak v. Lockhart, 699 A.2d 755, 761 (Pa. Super. 1997)). In Pennsylvania, the elements of fraud are: (1) a representation; (2)

-18-

which is material to the transaction in question; (3) made falsely, with knowledge of the falsity or reckless disregard for the truth; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance. Id. at 793 (citing Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999)). A misrepresentation is material if the transaction would not have been consummated but for the misrepresentation. Id. (citing Sewak, 699 A.2d at 760). In all actions brought under the UTPCPL, the plaintiff must demonstrate "an ascertainable loss *as a result of* the defendant's prohibited action." Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa. 2001) (emphasis in original).

Taking Plaintiffs' allegations as true for purposes of this motion, the Court finds that the elements of fraud have been pled with sufficient particularity. See Fed. R. Civ. P. 9(b). Plaintiffs assert that Defendants made numerous misrepresentations, including statements about Mr. Katz's experience as a builder, the materials used in the home, and code compliance. Pls.' Compl. at 25-27. Second, Plaintiffs have pled that these representations were material because, absent these statements, they would not have engaged in the transaction. Third, Plaintiffs aver that Defendants knew these representations were false. Fourth, Plaintiffs assert that the intent of these misrepresentations was to persuade the Cheatles to enter the transaction. Fifth, the Chealtes claim that

there was no evidence to indicate that David and Dawn Katz were not successful real estate developers.  Finally, Plaintiffs extensively pleaded facts showing damages.  Accordingly, Defendants' motion is denied as to this Count.

## F. <u>Count VIII – Pennsylvania Uniform Planned Community Act</u>

In Count VIII of the complaint, Plaintiffs assert a claim under the Pennsylvania Uniform Planned Community Act (UPCA), 68 Pa. Cons. Stat. Ann. §§ 5101-5414 (West 1994 & Supp. 2000).  In their complaint, Plaintiffs state that "[d]efendant Paradise Pines [Homeowners' Association] is unwilling and unable to take action to assert demands against David and Dawn Katz, and only by the Cheatles' claims and interposition of this Court can the rights of the Cheatles, and the HOA Corporation be properly managed and the individual Defendants' acts and omissions remedied."  Pls.' Compl. at 38.   In their response to Defendants' motion to dismiss, Plaintiffs characterize this Count as a derivative claim "on behalf of the Defendant Paradise Pines Homeowners' Association against Defendants."  Pls.' Mem. at 21.

The UPCA provides that officers and members of a homeowners' association executive board stand in a fiduciary relationship to the association and must perform their duties with care and good faith.  68 Pa. Cons. Stat. Ann. § 5303(a) (West 1994 & Supp. 2000). Under Pennsylvania law, the duty of care requires that directors serve the best interests of the corporation and act with the level

of care, including reasonable inquiry, skill, and diligence, of an ordinarily prudent person under similar circumstances. 15 Pa. Cons. Stat. Ann. § 5712(a) (West 2002). Taking Plaintiffs' version of the facts as true, they pleaded facts sufficient to make a claim for a violation of fiduciary duty. Specifically, Plaintiffs allege that the Paradise Pines Homeowners' Association was a sham, existing solely for the enrichment of David and Dawn Katz. Pls.' Compl. at 26. Accordingly, this Court finds that this Count survives Defendants' Motion to Dismiss.

## IV. <u>DISCUSSION – MOTION TO STRIKE LIS PENDENS</u>

The doctrine of <u>lis</u> <u>pendens</u> pertains to actions in equity affecting title to real property. <u>See</u> <u>Pen-Del Mortgage Associates v. FDIC</u>, CIV.A. No. 94-0067, 1994 WL 318445, *2 (E.D. Pa. June 30, 1994)(Hutton, J.). <u>Lis</u> <u>Pendens</u>, or suit pending, is the power, jurisdiction or control which a court acquires over property involved in the pending action until final judgment is entered. <u>See</u> <u>Pen-Del Mortgage Associates</u>, 1994 WL 318445, *2. The filing of <u>lis</u> <u>pendens</u> does not establish a <u>lien</u> against the property. <u>See</u> <u>Dice v. Bender</u>, 383 Pa. 94 (1955). Rather, it merely serves as notice to third parties that they risk being bound by an adverse judgment. <u>See</u> <u>McCahill v. Roberts</u>, 421 Pa. 233, 219 A. 2d 306 (1966). Indeed, the indexing of <u>lis</u> <u>pendens</u> functions as constructive notice to prospective buyers. <u>See</u> <u>Ricci v, Saia</u>, 13 Pa. D. & C.3d 361 (1980) (citing <u>Tourison's Estate</u>, 321 Pa. 299,

184 Atl. 95 (1936)). "[A] potential purchaser can readily ascertain whether there is a claim affecting the property." See Chrysler Corp. v. Fedders Corp., 670 F. 2d 1316, 1329 (3d Cir. 1981).

Lis pendens is properly filed against a property only when the litigation involves a determination of rights involved with that property. See Short v. Weinrebe, CIV.A. No. 87-5057, 1988 WL 12511 (E.D. Pa. Feb. 17, 1988). Either title to the property or the premise itself must be implicated in the suit. See First National Bank of Mercer County v. Allstate Distributors Inc., 25 Pa. D. & C.3d 329, 333 (1982).

The doctrine of lis pendens is rooted in common law and equitable principles. Id. at 331. As such, this doctrine remains subject to equitable principles. See Id. at 331; see also Dice, 283 Pa. 94. "In deciding whether to strike a lis pendens, the court must balance the equities to determine whether the application of the doctrine is harsh or arbitrary and whether cancellation of the lis pendens would result in prejudice to the nonpetitioning party." See Pen-Del Mortgage Associates, 1994 WL 318445, *2.

In the instant case, Plaintiffs assert that Defendants promised to construct Plaintiffs' home exactly as specified in the contract. Defendants, however, failed to obtain the necessary variances. Consequently, Defendants made unauthorized

modifications to the house, which affected property boundaries. See Plnt. Response to Deft. Mot. to Strike p. 4. As a result, Plaintiffs allege that some of their electrical controls, including Plaintiffs' sprinkler system, have been installed on what is being held out as Defendants' property. Plaintiffs contend that if full relief is granted to them, Defendants will have to cede the land in question to the Plaintiffs, thereby putting the land in issue. This may also cloud Defendants' title. In addition, Defendants have recently put their home up for sale. See Plnt. Ext. "5." An indexed lis pendens would put any prospective purchasers on notice of the potential boundary shifting.

Balancing the equities of the instant case, the Court finds that Defendants' motion must be denied. First, Plaintiffs put forth evidence showing that this action directly impacts Defendants' title to the land. In response, Defendants present no evidence disputing Plaintiffs' assertions implicating potential boundary disputes or refuting the notion that some of the land would have to be ceded as a remedy. Moreover, the purpose of the lis pendens, to provide constructive notice to potential purchasers, is implicated in this case. Accordingly, Defendant's Motion is denied.

### V.    CONCLUSION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may only dismiss a complaint where plaintiff can prove no set of

-23-

facts, consistent with his allegations, which justifies relief.  In this case, Plaintiffs have pled sufficient facts to state a claim for each of their Counts, except one.  Plaintiffs' Section 1962(b) claim must be dismissed.  Defendants' motion is denied as to all other claims.

Under Pennsylvania law, the indexing of <u>lis</u> <u>pendens</u> functions as constructive notice to prospective buyers.  <u>Lis</u> <u>pendens</u> is properly filed against a property only when the litigation involves a determination of rights involved with that property.  In this case, Plaintiffs aver that, if they are granted the full extent of the relief sought, Defendants will be forced to cede land to the Plaintiffs.  Thus, the title to Defendants' property is implicated by the instant suit.  Accordingly, Defendants' Motion to Strike Lis Pendens is denied.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT S. CHEATLE, <u>et</u> <u>al.</u>          :          CIVIL ACTION
                                     :
            v.                       :
                                     :
DAVID A. KATZ, <u>et</u> <u>al.</u>             :          NO. 02-4405

## <u>O R D E R</u>

AND NOW, this 1ˢᵗ day of April, 2003, upon consideration of Defendants' Motion to Dismiss (Docket No. 4) and Defendants' Motion to Strike Lis Pendens (Docket No. 5), IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Dismiss (Docket No.4) is **GRANTED IN PART AND DENIED IN PART**, as follows:

   (A) Defendants' Motion is **GRANTED** as to Plaintiffs' claim under 18 U.S.C. § 1962(b) and this claim is **DISMISSED;**

   (B) Defendants' Motion is **DENIED** as to the remainder of Plaintiffs' claims; and

(2) Defendants' Motion to Strike Lis Pendens (Docket No. 5) is **DENIED.**


                                     BY THE COURT:


                                     _____
                                     HERBERT J. HUTTON, J.